(C.D. 2192)

STARLIGHT TRADING, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 18, 1960)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: Plaintiff in this action contests the classification by the collector of customs of certain ladies' cotton blouses, described on

the invoice as items SS074 and SS118, under the provisions of paragraph 1529(a) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as wearing apparel in part of trimming and assessed with duty at the rate of 45 per centum ad valorem.

Plaintiff herein contends that the involved cotton blouses are not trimmed and are, accordingly, dutiable at only 20 per centum ad valorem under the provisions of paragraph 919 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for.

The pertinent portions of the statutory provisions involved are as follows:

Paragraph 1529(a) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739:

Articles provided for in subdivision 29_____45% ad val.
NOTE: * * *

Each reference in any item 1529(a) in this part to a numbered subdivision is to the indicated subdivision of the matter representing paragraph 1529(a), Tariff Act of 1930, as modified, in the publication of the United States Tariff Commission entitled "UNITED STATES IMPORT DUTIES (1950)" on the day this supplemental schedule is authenticated.

* * * * * * *

United States Tariff Commission publication, entitled "UNITED STATES IMPORT DUTIES (1950)," subdivision 29 of paragraph 1529(a):

Articles wholly or in part of any material provided for in subdivision 10 or 12, but not in part of lace, lace fabrics, or lace articles, not ornamented * * *, and not provided for in subdivision 16 or 22.

United States Import Duties (1950), *supra*, subdivision 12 of paragraph 1529(a):

Neck rufflings, flutings, quillings, ruchings, tuckings, trimmings, gimps, and ornaments_____ 50% ad val.

Subdivisions 16 and 22 of paragraph 1529(a) of United States Import Duties, *supra*, relate to articles, other than wearing apparel, and fabrics and articles in chief value of burnt-out laces, respectively.

Paragraph 919 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802:

Clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for:

* * * * * * *

Other_____ 20% ad val.

At the trial of this matter, one witness was called to testify on behalf of plaintiff, and there were received in evidence samples of items SS074 and SS118, as exhibits 1 and 2, respectively. It was stipulated by and between counsel for the respective parties that the involved blouses were in chief value of cotton and that said articles were classified as in part of trimming because of those features on the front of each blouse marked with an "X" in ink.

The witness called on behalf of plaintiff testified that he is employed by Pat Fashions, one of the largest domestic manufacturers of ladies' blouses, as its production manager and buyer of piece goods and trimmings; that he has held this position for about 7½ years and, prior thereto, held a similar position for approximately 10 or 12 years with the National Blouse Corp.; that he is familiar with blouses such as exhibits 1 and 2, since he has supervised the production of similar blouses. The witness then described the manner of production of blouses which is not deemed to be pertinent to the case at bar.

Based upon the witness' experience in the ladies' blouse trade, the witness testified he has acquired an understanding of the type of articles considered in the trade to be in part of trimming and stated as follows:

> I consider anything that is put on to ornament a blouse, specifically for the purpose of ornamentation, a trimming, such as laces, embroidery, narrow edges, braids, rickrack, fagotting, and so on.

Based upon his experience, the witness was of the opinion that the parts of exhibit 1 marked with an "X" are not trimmings, but are shoulder reinforcements and a type of yoke. Similarly, the witness was of the opinion that the part of exhibit 2 marked with an "X" is not a trimming, but is a basic collar type known as a jewel neck collar. The witness further stated that exhibit 2 is not trimmed nor is it edged with a narrow fabric at any place. Four basic collar types were described by the witness, and exhibits 3, 4, 5, and 6, domestically produced blouses, represented a jewel neckline, a mandarin-type collar, a johnny-type collar, and a button-down collar, respectively, and were received in evidence as illustrative exhibits. The witness then testified that there are hundreds of types of trimmings and proceeded to name a number, such as, cording, braiding, all types of laces, fringing, Mexican stitches, stitched embroidery, the Shiffley type of trimming, the scalloping types of stitching, tucking, fluting, allover embroideries, neck ruffles, and quillings.

No evidence has been adduced in the record which would tend to establish a commercial designation. Plaintiff, in its brief, also concedes that the question of commercial designation is not involved herein. The law is well settled that where commercial designation

is not in issue, tariff terms describing merchandise are to be considered according to their common meaning. Such meaning is a matter of law and not an issue of fact. Accordingly, the court is not bound by the testimony of witnesses but may consider as an aid to its determinations, dictionaries and other authoritative sources. It may also refer to the summaries of tariff information which were prepared by the United States Tariff Commission for the use of Congress in enacting the present tariff law.

We have reviewed various dictionary definitions of the word "trimmings," but do not find them to be sufficiently specific to be helpful here. However, both the Summaries of Tariff Information of 1929 and 1948 provide definitions of the word in issue which we regard as more illuminating. These read as follows:

Summaries of Tariff Information (1948), volume 15, part 5, page 48:

Trimming.—Narrow fabric used to trim or edge garments or upholstery; may be woven, braided, knit, or of lace or embroidery.

Summary of Tariff Information (1929), page 2026:

* * * Trimmings are narrow goods used to trim or edge garments or upholstery; they may be woven goods, or braid, or lace. * * *

The testimony of the witness herein that the portion of exhibit 1, which is marked with an "X" reinforces the shoulder, and his testimony relative to the portion of exhibit 2, similarly marked as part of the collar, does not seem to be particularly convincing, especially in view of our own examination of the samples which, by virtue of established law, have potent evidentiary value. We find that the appendages in each exhibit to which the witness alluded unquestionably add style and enhance the appearance of the blouses. However, whether this conclusion characterizes these features as trimmings may well be doubted, in view of the following discussion of the term in the case of *United States* v. *Blefeld & Goodfriend*, 24 C.C.P.A. (Customs) 213, T.D. 48658:

* * * The term *trimmings* is found in this paragraph, and that it there has a definite meaning which is not broad enough to include everything that trims something is too clear to admit of serious controversy. Trimmings are narrow textile goods and are used in trimming wearing apparel and upholstery. (See Tariff Information, cited *infra*.)

The Tariff Commission, when it prepared the Summary of Tariff Information, 1929 (see Vol. 2, pp. 2025 *et seq.*), with respect to paragraph 1430, Tariff Act of 1922, which, so far as the issues here are concerned, is identical with paragraph 1529 of the Tariff Act of 1930, devoted much space to a discussion of things provided for in said paragraph 1430. It there called attention to the fact that the paragraph included lace, braid, embroidery, and other textile articles, defined "trimmings," "veiling," "netting," "edging," "neck ruffling,"

and other terms, and made the following statement concerning "ornaments" and "trimmings":

> Ornaments include motifs or patterns, also, by Treasury decisions, artificial flowers, for attaching or apliquéing [*sic*] to a fabric for ornamentation. Trimmings are narrow goods used to trim or edge garments or upholstery; they may be woven goods, or braid, or lace. * * *

Following the principles enunciated in the *Blefeld & Goodfriend* case, *supra*, it is apparent that even though the appearance of the exhibits has been enhanced by the additional appendages, they are not in part of "trimmings" within the contemplation of paragraph 1529, since everything which trims is not necessarily "trimmings." In the sense in which Congress used the term, it was intended to embrace narrow fabrics only.

Narrow fabrics are not further defined in the 1929 Summary of Tariff Information in connection with the provision for trimmings. However, the phrase itself has been elsewhere employed in the tariff act as a descriptive term for various ribboned fabrics, and, under that designation, the following commentary may be found in said summary at page 1582:

> Paragraph 913 includes narrow woven fabrics with fast edges which have not been ornamented after leaving the loom * * *.

> "Fabrics with fast edges not exceeding 12 inches in width" is an inclusive term for narrow woven fabrics, as distinguished from cloth which is a woven fabric over 12 inches in width. These narrow woven fabrics, such as tapes, ribbons, bandings, beltings, bindings, and webbings, are made on narrow-ware looms which produce a number of them simultaneously.

In addition, the Summary of Tariff Information, 1921, relating to paragraph 912, contains the following pertinent information:

> Paragraph 912 includes narrow woven fabrics which have not been ornamented after leaving the loom, manufactures of such narrow woven fabrics, and certain articles made by braiding or twisting together yarns or threads. These "small wares" are confined mainly to those of which cotton is the component material of chief value. Similar small-wares paragraphs are to be found in the other three textile schedules.

> "Fabrics with fast edges not exceeding 12 inches in width" is an inclusive term for narrow woven fabrics, as distinguished from cloth which is a woven fabric over 12 inches in width. These narrow woven fabrics, such as tapes, ribbons, bandings, beltings, bindings, webbings, etc., are made on narrow-ware looms which produce a number of them simultaneously by means of numerous small shuttles positively driven by means of a rack and pinion.

It is obvious that the added pieces of fabrics on the subject blouses were not the product of narrow-ware looms. They are quite clearly portions of the same fabric which entered into the production of the blouses. This we conceive to be cloth as distinct from narrow wares and, hence, not "trimmings" as provided in paragraph 1529.

In view of the foregoing and as to the merchandise identified as items SS074 and SS118, the protest is sustained; in all other respects and as to all other merchandise, all the claims are overruled.

Judgment will be rendered accordingly.