BEFORE THE SECOND DIVISION, APRIL 19, 1965

**No. 69253.**—Starlight Trading, Inc. *v.* United States, protest 62/7120 (New York).

FORD, Judge:  Plaintiff herein protests the classification by the collector of customs of certain ladies' cotton blouses, described on the invoice as item SS 033, under the provisions of paragraph 1529(a) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as wearing apparel in part of trimming and assessed with duty at the rate of 45 per centum ad valorem.

Plaintiff contends that the cotton blouses involved herein are not trimmed and are, accordingly, dutiable at only 20 per centum ad valorem under the provisions of paragraph 919 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for.

The pertinent portions of the statutory provisions involved are as follows:

Paragraph 1529(a) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739:

Articles provided for in subdivision 29_____ 45% ad val.
NOTE: * * *

Each reference in any item 1529(a) in this part to a numbered subdivision is to the indicated subdivision of the matter representing paragraph 1529(a), Tariff Act of 1930, as modified in the publication of the United States Tariff Commission entitled "UNITED STATES IMPORT DUTIES (1950)" on the day this supplemental schedule is authenticated.

\*        \*        \*        \*        \*        \*        \*

United States Tariff Commission publication, entitled "United States Import Duties (1950)," subdivision 29 of paragraph 1529(a):

Articles wholly or in part of any material provided for in subdivision 10 or 12, but not in part of lace, lace fabrics, or lace articles, not ornamented, and not provided for in subdivision 16 or 22.

United States Import Duties (1950), *supra*, subdivision 12 of paragraph 1529(a):

Neck rufflings, flutings, quillings, ruchings, tuckings, trimmings, gimps, and ornaments _____ 50% ad val.

Subdivisions 16 and 22 of paragraph 1529(a) of the United States Import Duties, *supra*, relate to fabrics and articles, other than wearing apparel, and fabrics and articles in chief value of burnt-out laces, respectively.

Paragraph 919 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802:

Clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for:

\*     \*     \*     \*     \*     \*     \*

Other_____ 20% ad val.

One witness was called by the plaintiff. He testified that he is and has been employed for 11 years as a designer and production manager for Pat Fashions, Inc., a corporation in the business of producing blouses. Before that, he had been production manager for National Blouse Corp. and performed similar work. Both these employers are among the largest in the industry producing blouses. His work with Pat Fashions involves producing blouse designs, supervising production of blouses, and arranging for subcontractors to perform some of the manufacturing operations, including the application of trimmings to the blouses.

He stated that he is familiar with the blouse (exhibit 1) herein and has produced similar blouses. Such a blouse, he stated, is produced from material 36 or 38 inches wide. The various parts are cut from the material according to pattern specifications and sewn together. The parts of exhibit 1, which are marked "X," are made from the same material as the rest of the blouse. They are cut at the same time as the other parts and are not products of a narrow-ware loom.

The term "trimmings," based upon his experience, the witness stated, refers generally to narrow edges of material, such as schiffli embroidery put on a blouse by a subcontractor. In his opinion, the parts marked "X" of exhibit 1 do not consist of trimmings because they are made of the same material as the rest of the blouse, sewn by the same machine as the other parts of the blouse, such as the sleeve, and are included for purpose of style variation. Variations, however, stated the witness, are not trimmings, and that, similarly, the addition of sleeves or pockets are not considered trimmings.

In his opinion, the parts of exhibit 1 marked "X" are yokes, which term in the trade generally relates to anything attached like a yoke whether it is on the shoulder or on the side of the blouse. A yoke may be of different shapes and dimensions. A narrow-ware loom would be a 4-, 10-, or 12-inch loom, rather than a 36-, 45-, or 60-inch loom. The narrow-ware looms are made specifically for trimming purposes. For example, you may have looms only an inch wide that produce particular types of trimmings to be used for ornamentation. He stated that a 1-inch strip of fabric produced on a narrow-ware loom would be a trimming, if it contained some fancy stitching, rhinestones, or other ornamentation, and that, if exhibit 1 contained a narrow-edge Venice around the collar, he would consider it a trimming; or, if the blouse contained schiffli embroidery, fagoting-type stitches, tucking variations, or laces, it would be trimming. He added that, generally, when trimming is put on a blouse, it is sent to a specific factory that makes the trimming and adds it to the blouse. The addition of a pocket would not be a trimming, but if it contained embroidery it would, in his opinion, be a trimming. If the addition is specifically done for ornamentation, it would be a trimming, whereas the addition of material out of the same cloth, at the same shop, at the same time, manufactured in the same way as the sleeves are added, is not a trimming.

Trimming, the witness continued, is something added to the blouse specifically for the purpose of ornamentation from other than its own material. The same material can be used for ornamentation if it is, for example, embroidered or has tucking stitches added. This type of stitching is not normally put on a blouse. Similarly, material from the same run as the material used in the blouse would have various multitype stitches, such as zigzag type, which would

make it a trim. These would be added specifically for ornamentation and to give a trim effect. However, if the material were not stitched or changed in any way, it would not be a trim.

The patches marked "X" on exhibit 1 have a double, rather than a single, material. The addition of the extra layer of material reinforces the stitch. Every point in a blouse is a stress point, and the reason for the use of a double material would be for reinforcement. The portion of the blouse marked "X" on exhibit 1 would be also for the purpose of styling to make it different from other blouses. Women who purchase blouses, he said, desire constant variation in style.

It was stipulated at the opening of the trial that plaintiff's exhibit 1 is the same as the merchandise described on the invoice as item SS 033.

Exhibit 1, the blouse itself, is before the court, thereby affording opportunity to weigh more fully the evidentiary value of the pertinent words of the record.

The only point at issue before the court is whether the features on plaintiff's exhibit 1 marked "X" are "trimmings," within the common meaning of the term, as used in paragraph 1529(a) of the Tariff Act of 1930, as modified.

We find directly in point the recent case of *Starlight Trading Inc.* v. *United States*, 45 Cust. Ct. 30, C.D. 2192, on the same issue and similar merchandise. Reference to this earlier case provides rewarding aid and enlightenment on the instant issue. A close examination of that case, therefore, is warranted.

There, as in the instant case, the merchandise was ladies' blouses. The appendage features on the blouses involved therein were similar to those in the instant case. The witness therein testified that such appendages are known in the trade as yokes. They are cut from the same fabric as the rest of the blouse and sewn superimposed over the other fabric at stress points for reinforcement. This is done in plain stitching. That they also may add style and enhance the appearance and desirability of the blouse apparently is incidental and of no significance to the issue.

In holding that the added pieces of fabric were not trimmings, the court said, in the earlier *Starlight* case, *supra:*

It is obvious that the added pieces of fabrics on the subject blouses were not the product of narrow-ware looms. They are quite clearly portions of the same fabric which entered into the production of the blouses. This we conceive to be cloth as distinct from narrow wares and, hence, not "trimmings" as provided in paragraph 1529.

There, as in the instant case, commercial designation was not involved.

Further, quoting from the *Starlight* case, *supra:*

* * * The law is well settled that where commercial designation is not in issue, tariff terms describing merchandise are to be considered according to their common meaning. Such meaning is a matter of law and not an issue of fact. Accordingly, the court is not bound by the testimony of witnesses but may consider as an aid to its determinations, dictionaries and other authoritative sources. It may also refer to the summaries of tariff information which were prepared by the United States Tariff Commission for the use of Congress in enacting the present tariff law.

* * * both the Summaries of Tariff Information of 1929 and 1948 provide definitions of the word in issue which we regard as more illuminating. These read as follows:

Summaries of Tariff Information (1948), volume 15, part 5, page 48:

Trimming.—Narrow fabric used to trim or edge garments or upholstery; may be woven, braided, knit, or of lace or embroidery.

Summary of Tariff Information (1929), page 2026:

* * * Trimmings are narrow goods used to trim or edge garments or upholstery; they may be woven goods, or braid, or lace. * * *

Further elaboration on the term "trimmings" is found in *United States* v. *Blefeld & Goodfriend*, 24 CCPA 213, T.D. 48658 :

* * * The term *trimmings* is found in this paragraph, and that it there has a definite meaning which is not broad enough to include everything that trims something is too clear to admit of serious controversy. Trimmings are narrow textile goods and are used in trimming wearing apparel and upholstery. (See Tariff Information, cited *infra*.)

The Tariff Commission, when it prepared the Summary of Tariff Information, 1929 (see Vol. 2, pp. 2025 et seq.), with respect to paragraph 1430, Tariff Act of 1922, which, so far as the issues here are concerned, is identical with paragraph 1529 of the Tariff Act of 1930, devoted much space to a discussion of things provided for in said paragraph 1430. It there called attention to the fact that the paragraph included lace, braid, embroidery, and other textile articles, defined "trimmings," "veiling," "netting," "edging," "neck ruffling," and other terms, and made the following statement concerning "ornaments" and "trimmings" :

Ornaments include motifs or patterns, also, by Treasury decisions, artificial flowers, for attaching or apliquéing [*sic*] to a fabric for ornamentation. Trimmings are narrow goods used to trim or edge garments or upholstery ; they may be woven goods, or braid, or lace. * * *

Following the principles enunciated in the *Blefeld & Goodfriend* case, *supra*, it is apparent that, even though the appearance of the exhibit has been enhanced by the additional appendages, it is not in part of "trimmings" within the contemplation of paragraph 1529, since everything which trims is not necessarily "trimmings." In the sense in which Congress used the term, it was intended to embrace narrow fabrics only.

Narrow fabrics are not further defined in the 1929 Summary of Tariff Information in connection with the provision for trimmings. However, the phrase itself has been elsewhere employed in the tariff act as a descriptive term for various ribboned fabrics, and, under that designation, the following commentary may be found in said summary at page 1582 :

Paragraph 913 includes narrow woven fabrics with fast edges which have not been ornamented after leaving the loom * * *.

"Fabrics with fast edges not exceeding 12 inches in width" is an inclusive term for narrow woven fabrics, as distinguished from cloth which is a woven fabric over 12 inches in width. These narrow woven fabrics, such as tapes, ribbons, bandings, beltings, bindings, and webbings, are made on narrow-ware looms which produce a number of them simultaneously.

In addition, the Summary of Tariff Information, 1921, relating to paragraph 912, contains the following pertinent information :

Paragraph 912 includes narrow woven fabrics which have not been ornamented after leaving the loom, manufactures of such narrow woven fabrics, and certain articles made by braiding or twisting together yarns or threads. These "small wares" are confined mainly to those of which cotton is the component material of chief value. Similar small-wares paragraphs are to be found in the other three textile schedules.

"Fabrics with fast edges not exceeding 12 inches in width" is an inclusive term for narrow woven fabrics, as distinguished from cloth which is a woven fabric over 12 inches in width. These narrow woven fabrics, such as tapes, ribbons, bandings, beltings, bindings, webbings, etc., are made on narrow-ware looms which produce a number of them simultaneously by means of numerous small shuttles positively driven by means of a rack and pinions.

In harmony with the *Starlight* case, *supra*, is the case of *Toyomenka, Inc.* v. *United States*, 51 Cust. Ct. 178, Abstract 67918, wherein it was held that ladies' cotton blouses, with overlaying strips made from broad woven cloth identical to the fabric from which the balance of the blouse was made, were not in part of trimmings even though the overlaying material enhanced the desirability of the blouse in the eyes of the consumer.

The holding in the earlier case, *Starlight Trading, Inc.* v. *United States, supra,* that the merchandise was not trimmings, is, in our opinion, controlling, and, therefore, we hold that the merchandise in the instant case is not "trimmings," as contemplated in paragraph 1529(a) of the tariff act, as modified.

Based upon the record and on the foregoing, the protest is sustained as to the merchandise identified herein as item SS 033.

Judgment will be rendered accordingly.