the Poseidon and the Inka can be said of the importations herein: "* * * there are mounts on the sides to accommodate the motor supports." *Id.* at 215.

Structurally and functionally, there is a distinction between the motor mounts and the motor supports. The mounts serve to accommodate the motor supports which in turn accommodate the motor. Although there are no supports (wood motor mount) included with the present importations, neither were there *supports* (steel tubes) in *Healthway's.* Notwithstanding the absence of the tubular steel parts, which support the motor, the court nevertheless held the Poseidon and the Inka to be motor boats within the intendment of paragraph 370 of the Tariff Act of 1930. All that the court required was the presence of *bona fide* "mounts * * * to accommodate the motor supports."

Although some confusion has resulted from the various meanings attributed to the word "mount," it is clear that the "metal valves" and "motor mount ropes" in the present case, are designed to serve the identical function as the "mounts" in the *Healthway's* case. Notwithstanding the difference in structure and design, the disputed element of a *mount* or *mounting* is equally present in both cases.

In view of this finding, there can be no doubt that plaintiffs are entitled, as a matter of justice, to have the standard applied in *Healthway's* also applied to the importations in this case. The *Healthway's* case, in effect, held that the condition of the merchandise at the time of the importation was sufficient to qualify within the broadened statutory definition of motor boat in paragraph 370 of the Tariff Act of 1930. It is not only the desire to attain uniformity, but also the determination to do justice that require that the rule of the *Healthway's* case be applied here.

In view of the foregoing, the presumption of correctness of the collector's classification herein is deemed to be overcome, and the protests are consequently sustained. Judgment will issue accordingly.

(C.D. 3839)

MARUBENI IIDA (AMERICA), INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 3, 1969)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov*, trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: This case is directed against the classification of certain children's cotton corduroy coveralls as wearing apparel in part of trimming, under paragraph 1529(a), Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108. Plaintiff contends said articles are not trimmed and are therefore subject to classification as articles of clothing or wearing apparel in chief value of cotton under the provisions of paragraph 919, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

The pertinent portions of the statutory provision read as follows:

Paragraph 1529(a), Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108:

> Articles (including fabrics) wholly or in part of any product provided for in paragraph 1529(a), Tariff Act of 1930:
>
> \* \* \* \* \* \* \*
>
> Provided for in subdivision [17] of paragraph 1529(a):
>> Wholly or in part of all-overs, edgings, flouncings, flutings, fringes, galloons, gimps, insertings, neck ruffings, ornaments, quillings, ruchings, trimmings, or tuckings, if not in part of lace and not ornamented (except gloves and mittens) _____ 42½% ad val.

Paragraph 919, Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802:

Clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for:

\* \* \* \* \* \* \*

Other _____ 20% ad val.

The record herein consists of the testimony of two witnesses called on behalf of plaintiff and a sample of the merchandise received in evidence as plaintiff's exhibit 1. It was also stipulated by and between counsel for the respective parties that exhibit 1 is in chief value of cotton and was classified under paragraph 1529(a), *supra*, by virtue of the pieces on the garment marked "X". The first witness merely identified the exhibit 1 as coming from the shipment involved. Mr. Maher, the examiner at the time of importation, testified that the two features marked with an "X" on exhibit 1 were made of the same corduroy material as the garment. The material of which the garment was made was not a product of a narrow-ware loom nor was the portion marked "X".

Mr. Maher considered the portions of the garment marked with an "X" to be narrow pieces of textile goods which lead a separate existence before being attached to the garment. He was also of the opinion that said portions of the garment had no functional use and he therefore considered them to be trimmings.

The question of whether or not an article is deemed to be in part of trimming under the provisions of paragraph 1529(a), Tariff Act of 1930, has been before the court on numerous occasions. *United States* v. *Blefeld & Goodfriend*, 24 CCPA 213 (1936), T.D. 48658; *United States* v. *Hochschild, Kohn & Co.*, 31 CCPA 98, C.A.D. 255 (1943); *Starlight Trading, Inc.* v. *United States*, 45 Cust. Ct. 30, C.D. 2192 (1960); *Toyomenka, Inc.* v. *United States*, 51 Cust. Ct. 178, Abstract 67918 (1963); *Starlight Trading, Inc.* v. *United States*, 54 Cust Ct. 398, Abstract 69253 (1965); *Starlight Trading, Inc., et al.* v. *United States*, 56 Cust. Ct. 851, Abstract 69760 (1966).

In the *Starlight* and *Toyomenka* cases, *supra*, the court has consistently held "so-called trimmings" made of the same material as the garment, such as yokes, appendages, collars, etc., not to be within the purview of trimmings as that term is used in paragraph 1529(a), Tariff Act of 1930. Said articles, except in the *Starlight* case, Abstract 69760, were not considered trimmings because they were not made from narrow-ware fabrics. Particularly pertinent on this phase is our observation in the *Starlight* case Abstract 69760.

In C.D. 2192, *supra*, we considered the information contained in the Summaries of Tariff Information, as well as certain statements made in *United States* v. *Blefeld & Goodfriend*, 24 CCPA 213, T.D. 48658, to the effect that trimmings were narrow textile goods which are used for trimming wearing apparel or upholstery. This was further amplified by reference to the information contained in the 1929 and 1921 Summaries of Tariff Information covering paragraphs 913 and 912, respectively. The information contained therein was indicative of the fact that such articles covered by these paragraphs were products of narrow-ware looms. Defendant contends, and rightly so, that since the trimmings provided for in paragraph 1529(a) may be woven, braided, knit, or of lace or embroidery, such references to said paragraphs 913 and 912, *supra*, are not applicable to the trimmings referred to in paragraph 1529(a), *supra*.

Our quotation in C.D. 2192, *supra*, relative to products of narrow-ware looms, was not intended to limit the provision of paragraph 1529(a) to narrow woven articles, but was merely utilized as illustrative of woven fabric used for trimming. This information was quoted since the fabric involved in C.D. 2192, *supra*, as in the instant case, was woven and not braided or knit, nor was it composed of lace or embroidery. This is not to say that all trimmings which are woven must be a product of a narrow-ware loom, since what is done with the so-called "trimming" is also of great importance.

The record establishes, if the yokes were tucked, fagoted, or contained rhinestones, beadings, or embroidery, or any of the hundreds of ornamental articles, the witness would consider the blouses to be ornamented.

What was done with the material in the instant case? An appendage extending from the base of the yoke measuring approximately one inch wide was sewn on to the entire width of the front of the garment with the exception of a zipper. We see no real distinction between the collars or appendages in the *Starlight* case, C.D. 2192, and those involved herein. Neither served a utilitarian purpose but did "style" the article or enhance its appearance. We are of the opinion that so-called trimming made of the same material is not in and of itself trimming within the purview of paragraph 1529(a), *supra*. Accordingly, the protest is sustained.

Judgment will be entered accordingly.