(C.D. 3929)

SHALOM BABY-WEAR, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 20, 1969)

*Lane, Young & Fox* (*James G. McGoldrick* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov*, trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: This cause of action involves the proper classification of certain imported polo shirts containing an overlay of yellow cotton knitted material which is sewed vertically on the placket of the involved shirts. Said overlay contains a screen printed emblem. Classification was made under the provisions of paragraph 1529(a), Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as wearing apparel in part of trimmings and assessed with duty at the rate of 45 per centum ad valorem.

Plaintiff by timely protest claims said merchandise to be properly dutiable at only 25 per centum ad valorem under the provisions of paragraph 917, Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, as made effective by the proclamation of the President, 90 Treas. Dec. 280, T.D. 53877, as knit outer-

wear wholly or in chief value of cotton. Alternatively, plaintiff contends for a rate of 30 per centum ad valorem under said paragraph 917, *supra*, which insofar as can be ascertained relates to underwear wholly or in chief value of cotton. There being no evidence along this line, said claim is overruled.

The record herein consists of the testimony of two witnesses called on behalf of plaintiff and six exhibits. The parties have stipulated that the imported polo shirts are wearing apparel in chief value of cotton. Counsel have also stipulated that classification under paragraph 1529 (a), *supra*, was "solely because of the yellow piece of cloth, approximately $4\frac{1}{2}$ inches long by 1 and $\frac{3}{16}$ inches wide, sewed on the placket of the shirt over the regular body of the shirt, which is not of the same fabric as the balance of the shirt, upon which appears an emblem which seems to be crossed flags over a ship's wheel, and several other markings, but the existence of the emblem and the markings played no part in the classification of the merchandise." The emblem was screen printed on the yellow knit fabric.

Mr. Matthew Berger, sales manager of plaintiff corporation, whose duties also include styling and production has been with said company for 12 years. He testified that prior to his employment with plaintiff, he was in the business of manufacturing knit goods for children for 4 years. Prior to that he was associated with another manufacturer of children's wear. He styled the imported polo shirts and ordered them from abroad.

In the opinion of the witness, the overlay strip sewn on the shirt was not trimming. Trimmings are specifically produced to decorate a garment and are made with finished edges. The overlay involved herein was knit in a tubular width and is illustrated by plaintiff's illustrative exhibit 2. The design is screen printed on the material and then cut to strips which have frayed edges. The edges are turned under and sewn by hand to the placket.

The garment could be sold without the overlay since you still have a placket. The function of the strip on the placket is to enhance the garment and make it more attractive and also to stiffen it a bit. Plaintiff's exhibit 3, a domestically produced polo shirt, has a placket of knit material which has a woven interlining to keep the placket rigid. Plaintiff's exhibit 1 does not have an interlining but it serves to give more body to the placket.

Mr. Jack Goldstein was next called on behalf of plaintiff and he testified that he is a partner in Americana Braid Company whose business is the jobbing of braid and narrow fabric trimming. He has been a partner for 8 years and prior to that he was in the same business for 7 years with another company. His present duties include designing of trimmings. He sells his merchandise to wearing apparel

manufacturers. The yellow material is not a narrow fabric. A narrow fabric is up to 13 inches wide and has both or at least one edge finished. Plaintiff's exhibit 4-A is a knit narrow fabric; plaintiff's exhibit 4-B is a narrow fabric made on a braiding machine; plaintiff's exhibit 4-C is a narrow fabric. All of the foregoing have fast edges and are sold as trimming as are exhibits 4-D and 4-E. Plaintiff's collective exhibits 5-A, B and C are narrow fabrics woven on a jacquard loom and are sold as trimmings. They all have fast edges.

Plaintiff's illustrative exhibit 6-A is a narrow fabric having fast edges and is sold as trimming. Plaintiff's exhibit 6-B is a tubular piece of goods which is sold as trimming. Exhibit 6-C is a braided narrow fabric having fast edges and is sold as trimming. Plaintiff's exhibit 6-D is similar to exhibit 6-C but is wider and is sold as trimming.

The witness examined plaintiff's exhibit 1 and testified that his firm does not sell the overlay material contained thereon as trimming.

Based upon the record we have a knit polo shirt composed principally of yellow knitted cloth having a collar, cuffs, and a placket of a brown and white knitted material, and an overlay on the placket of a yellow knitted material which is not the same fabric as the rest of the shirt. This additional strip of cloth is cut from piece goods and does not have fast edges. The question presented is whether a piece of cloth of different material, which is cut from piece goods and not a narrow fabric is for tariff purposes trimmings. The question of what constitutes trimmings for tariff purposes has been before this court on numerous occasions. One of the leading cases on this point is *United States* v. *Blefeld & Goodfriend*, 24 CCPA 213, T.D. 48658 (1936). The court therein made the following observation:

> * * * The term *trimmings* is found in this paragraph, and that it there has a definite meaning which is not broad enough to include everything that trims something is too clear to admit of serious controversy. Trimmings are narrow textile goods and are used in trimming wearing apparel and upholstery. * * *

The Tariff Commission, when it prepared the Summary of Tariff Information, 1929 (see Vol. 2, pp. 2025 *et seq.*), with respect to paragraph 1430, Tariff Act of 1922, which, so far as the issues here are concerned, is identical with paragraph 1529 of the Tariff Act of 1930, devoted much space to a discussion of things provided for in said paragraph 1430. It there called attention to the fact that the paragraph included lace, braid, embroidery, and other textile articles, defined "trimmings," "veiling," "netting," "edging," "neck ruffling," and other terms, and made the following statement concerning "ornaments" and "trimmings":

> Ornaments include motifs or patterns, also, by Treasury decisions, artificial flowers, for attaching or apliquéing [sic] to a fabric for ornamentation. Trimmings are narrow goods used to

trim or edge garments or upholstery; they may be woven goods, or braid, or lace. * * *

Following the principles in the *Blefeld* case are a number of cases involving blouses. *Starlight Trading, Inc., et al.* v. *United States,* 56 Cust. Ct. 851, Abstract 69760 (1966); *Starlight Trading, Inc.* v. *United States,* 54 Cust. Ct. 398, Abstract 69253 (1965); *Toyomenka, Inc.* v. *United States,* 51 Cust. Ct. 178, Abstract 67918 (1963); *Starlight Trading, Inc.* v. *United States,* 45 Cust. Ct. 30, C.D. 2192 (1960).

In this case as in the above cited cases on trimmings, the question of commercial designation is not involved. Accordingly, the law is well settled that where commercial designation is not in issue, the tariff terms describing merchandise are to be considered according to their common meaning. Such meaning is a matter of law and not an issue of fact. The testimony of witnesses may be considered as advisory to the court. As an aid to its determination, the court may consider dictionaries, Summaries of Tariff Information and other authoritative sources.

In the first *Starlight* case (C.D. 2192), supra, we set forth the following information contained in the Summaries of Tariff Information:

Summaries of Tariff Information (1948), volume 15, part 5, page 48:

Trimming.—Narrow fabric used to trim or edge garments or upholstery; may be woven, braided, knit, or of lace or embroidery.

Summary of Tariff Information (1929), page 2026:

* * * Trimmings are narrow goods used to trim or edge garments or upholstery; they may be woven goods, or braid, or lace. * * *

The court then further quoted from the 1929 Summary of Tariff Information with respect to narrow fabrics as encompassed by paragraphs 912 and 913 of the Tariff Act of 1930. These paragraphs related to woven narrow fabric and in order to prevent any misunderstanding in the last *Starlight* case, *supra,* Abstract 69760, we made the following observation:

In C.D. 2192, *supra,* we considered the information contained in the Summaries of Tariff Information, as well as certain statements made in *United States* v. *Blefeld & Goodfriend,* 24 CCPA 213, T.D. 48658, to the effect that trimmings were narrow textile goods which are used for trimming wearing apparel or upholstery. This was further amplified by reference to the information contained in the 1929 and 1921 Summaries of Tariff Information covering paragraphs 913 and 912, respectively. The information contained therein was indicative of the fact that such articles covered by these paragraphs were products of narrow-ware looms. Defendant contends, and rightly so, that, since the trimmings provided for in paragraph 1529(a) may be woven, braided, knit,

or of lace or embroidery, such references to said paragraphs 913 and 912, *supra*, are not applicable to the trimmings referred to in paragraph 1529 (a), *supra*.

Our quotation in C.D. 2192, *supra*, relative to products of narrow-ware looms, was not intended to limit the provision of paragraph 1529 (a) to narrow woven articles, but was merely utilized as illustrative of woven fabric used for trimming. This information was quoted since the fabric involved in C.D. 2192, *supra*, as in the instant case, was woven and not braided or knit, nor was it composed of lace or embroidery. This is not to say that all trimmings which are woven must be a product of a narrow-ware loom, since what is done with the so-called "trimming" is also of great importance.

The record establishes, if the yokes were tucked, fagoted, or contained rhinestones, beadings, or embroidery, or any of the hundreds of ornamental articles, the witness would consider the blouses to be ornamented.

In all the *Starlight* cases and the *Toyomenka* case, the court had before it blouses having additions in the form of yokes, collars, etc., which were made of the same material as the garments. The additions all enhanced the blouses but were not considered trimmings.

The case at bar differs to the extent that the overlay is of a different material. Aside from this fact, the cases appear to be substantially the same. We are of the opinion, based upon our previous decisions, that trimmings must be made from narrow fabrics whether woven, knit, braid, etc., or when made from piece goods, these must contain additional ornamentation such as embroidery, faggoting, etc.

In the case of *United States* v. *Hochschild, Kohn & Co.*, 31 CCPA 98, C.A.D. 255 (1943), we note the following digest of testimony:

Edward I. Stofman, who was the Examiner, had held that position for three years, having passed on textiles, wool and cottons * * *. Although he was graduated at the Philadelphia Textile School, his familiarity with the meaning of the term "trimmings" originated with his customs work and not with his scholastic education * * *. His advisory classification in the instant case was dictated by the scalloped edge effect on the garments in Collective Exhibit 2. The white material is contrasted with the blue and constitutes the scallop. It is a different type of work than that in the body of the garment. In the Examiner's opinion the garment would be complete without this so-called edging, and the edging gives it an ornamental effect. It serves no practical or utilitarian purpose. There would have to be some kind of binding on the edge but that does not require so extensive a piece of material. As the garment shows, the edging embellishes and gives the garment an ornamental character * * *. The scalloped edge which the witness termed an edging was made in the course of the manufacture of the sacque and the boots. The yoke is of one kind of stitch, the body of another kind, and the scallop or outside portion of still another kind * * *.

The court held the sacque sets involved not to be in part of trimming. In the case at bar, the addition is made of a different material which is not the same color as the placket, although it is the same color as the body of the shirt. While the addition may enhance the looks of the article, it does not in our opinion trim it. Following the principles in the cases cited, *supra*, we are of the opinion that the claim of plaintiff for the rate of duty at 25 per centum ad valorem under paragraph 917, *supra*, should be sustained.

Judgment will be entered accordingly.