**UNITED STATES, Appellant,**

v.

**MARUBENI IIDA (AMERICA), INC.,**
**Appellee.**

**UNITED STATES, Appellant,**

v.

**MISS PAT FASHIONS, INC., Appellee.**

**Customs Appeal Nos. 5367, 5376.**

United States Court of Customs
and Patent Appeals.

March 4, 1971.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Alan S. Rosenthal, Judith S. Seplowitz, Washington, D. C., for the United States.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellees. E. Thomas Honey, Irving Levine, New York City, of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and NICHOLS, Judge, United States Court of Claims, sitting by designation.

BALDWIN, Judge.

In these two appeals, the government seeks reversal of judgments of the Customs Court, Second Division [1] sustaining the protests of two importers against the classification of their importations by the Collector of Customs and holding the importations in both cases to be dutiable at the rate of 20 per cent ad valorem under paragraph 919, Tariff Act of 1930, as modified by T.D. 51802, as clothing or articles of wearing apparel in chief value of cotton, and not specially provided for.

---

1. Marubeni-Iida (America), Inc. v. United States, 62 Cust.Ct. 640, C.D. 3839 (1969) in No. 5367, and Miss Pat Fashions, Inc. v. United States, 63 Cust.Ct. 20, C.D. 3867 (1969) in No. 5376.

The merchandise involved in *Marubeni-Iida* consists of children's cotton corduroy coveralls, each garment having a strip of material cut from the same fabric as the coveralls sewn across each side of the front. In *Miss Pat Fashions,* the appeal is limited to only part of the merchandise involved in the protest below, that part consisting of blouses having two triangular pieces of the same material as the blouses sewn on each side of their fronts. The collector had held the coveralls to be dutiable at 42½ per cent ad valorem as wearing apparel in part of trimmings under paragraph 1529(a) of the Tariff Act of 1930, as modified by T.D. 54108. He had held the blouses to be in part of trimmings and dutiable at 45 per cent ad valorem under paragraph 1529(a) of the Tariff Act of 1930, as modified by T.D. 52739.

The pertinent statutory provision of paragraph 1529(a), as modified by T.D. 54108 *(Marubeni-Iida),* reads:

Articles (including fabrics) wholly or in part of any product provided for in paragraph 1529(a), Tariff Act of 1930:

\* \* \* \* \* \*

Provided for in subdivision [17] of paragraph 1529(a):

Wholly or in part of all-overs, edgings, flouncings, flutings, fringes, galloons, gimps, insertings, neck rufflings, ornaments, quillings, ruchings, trimmings, or tuckings, if not in part of lace and not ornamented (except gloves and mittens) \* \* \* 42½ ad val.

The reference to subdivision 17 of paragraph 1529(a) relates to that paragraph and subdivision as set forth in United States Import Duties (1952).

The pertinent statutory provision of paragraph 1529(a) of the Tariff Act of 1930, as modified by T.D. 52739 *(Miss Pat Fashions),* is:

Articles provided for in subdivision 29 ......... 45% ad val.

The references to subdivisions in this part of paragraph 1529(a) relate to the subdivisions as set forth in United States Import Duties (1950), subdivision 29 of which reads:

Articles wholly or in part of any material provided for in subdivision 10 or 12, but not in part of lace, lace fabrics, or lace articles, not ornamental, and not provided for in subdivision 16 or 27.

Subdivision 12, cited above reads:

Neck rufflings, flutings, quillings, ruchings, tuckings, insertings, galloons, edgings, trimmings, fringes, gimps, and ornaments.

Subdivisions 16 and 22 relate to articles other than wearing apparel such as is involved here.

The only issue involved in both appeals is whether the imported garments consist of articles in part of trimmings within the meaning of that term as used in paragraph 1529(a).

### THE RECORD

In *Marubeni-Iida,* the record consists of a sample garment from the merchandise introduced in evidence by the importer, a stipulation, and testimony of two witnesses in behalf of the importer. The sample is a child's coverall with a horizontally-extending piece of material on each side of the front. It was stipulated that the garment is in chief value of cotton and that it was classified under paragraph 1529(a) as in part of trimmings only because of those two additional pieces of material. One witness, the customs examiner who originally passed on the goods, testified that the two pieces were made of the same corduroy material as the garment itself and that the material would not have been made on a narrow-ware loom. This witness considered the pieces to be narrow pieces of textile goods which had separate existence before being attached to the garment. He also testified that the pieces had no function other than decorating the garment and that he considered them trimmings.

The evidence in *Miss Pat Fashions* includes a blouse representative of the importations entered as Exhibit 5 and

testimony of two witnesses, one called by the importer and the other by both parties. The exhibit blouse has two pieces of material in the shape of relatively small triangles, pointing respectively to the left and right, sewed on each side (for a total of four on the blouse) of the upper portion of its front. The bases of these two triangles lie along a longitudinal seam in offset relation so that the top corner of the base of one triangle meets the lower corner of the base of the other. The base of each triangle is about 3½ inches long and the altitude is about 1¾ inches. The witness who was called solely by the importer, an employee responsible for styling the imported blouses, testified that the pieces or appendages were made of the same material as the body of the blouse and that this material was made on a broadwoven loom and not on a narrow-woven loom. The other witness, the customs examiner who passed on the imports, testified that the triangular appendages do not have a utilitarian purpose but are ornamental only.

### THE OPINIONS OF THE CUSTOMS COURT

In *Marubeni-Iida,* the Customs Court first noted several cases in which it had held " 'so-called trimmings' made of the same material as the garment such as yokes, appendages, collars, etc. not to be trimmings as that term is used in paragraph 1529(a)." These cases are Starlight Trading, Inc. v. United States, 45 Cust.Ct. 30, C.D. 2192 (1960) (hereinafter "*Starlight I*"); Toyomenka, Inc. v. United States, 51 Cust.Ct. 178, Abstract 67918 (1963); Starlight Trading, Inc. v. United States, 54 Cust.Ct. 398, Abstract 69253 (1965) ("*Starlight II*"); and Starlight Trading, Inc., et al. v. United States, 56 Cust.Ct. 851, Abstract 69760 (1966) ("*Starlight III*"). While acknowledging that in the first three of these cases the items in question "were not considered trimmings because they

were not made from narrow-ware fabrics",[2] the court next quoted with approval an excerpt from *Starlight III* which stated that it did not intend in *Starlight I* to limit the provision of paragraph 1529(a) to "narrow woven articles" and included the following:

> This is not to say that all trimmings which are woven must be a product of a narrow-ware loom, since what is done with the so-called "trimming" is also of great importance.

Turning then to the case before it, the full reasoning of the court was as follows:

> What was done with the material in the instant case? An appendage extending from the base of the yoke measuring approximately one inch wide was sewn on to the entire width of the front of the garment with the exception of a zipper. We see no real distinction between the collars or appendages in the *Starlight* case, C.D. 2192 [Starlight I], and those involved herein. Neither served a utilitarian purpose but did "style" the article or enhance its appearance. We are of the opinion that so-called trimming made of the same material is not in and of itself trimming within the purview of paragraph 1529(a), *supra.*

In *Miss Pat Fashions* the court specifically adopted the "rationale" in *Marubeni-Iida* and concluded that the blouses there in issue were not in part of trimmings.

### OUR OPINION

These appeals require us to determine whether the Customs Court erred in deciding that the presumptively correct classification of the present imports under paragraph 1529(a) by the collector was erroneous. See United States v. Good Neighbor Imports, Inc., 33 CCPA 91, C.A.D. 321 (1945).

In support of the decisions below, the importers argue as one point that the

**2.** It is apparent from the record and the cited cases that the terms "narrow-ware fabrics," and "narrow woven fabrics" are used to designate fabrics woven on a "narrow-ware" loom as contrasted to a loom that produces wide fabrics or cloth.

appendages on the garments are not "trimmings" under paragraph 1529(a) because they are not products of a narrow-ware loom. Despite the fact that the Customs Court in these cases did not rely on that reasoning, the argument requires examination of the legal proposition which underlies it.

The view that "trimmings" must be a product of a narrow-ware loom apparently originated with the Customs Court in *Starlight I*. The *Toyomenka* and *Starlight II* cases, *supra*, then followed this first case as controlling precedent. In *Starlight I*, the court noted the following definitions:

> Summaries of Tariff Information (1948), volume 15, part 5, page 48:
>
> *Trimming.*—Narrow fabric used to trim or edge garments or upholstery; may be woven, braided, knit, or of lace of embroidery.
>
> Summary of Tariff Information (1929),
>
> * * * Trimmings are narrow goods used to trim or edge garments or upholstery; they may be woven goods, or braid, or lace. * * *

The court also quoted the following from United States v. Blefeld & Goodfriend, 24 CCPA 213, T.D. 48658 (1936):

> The term *trimmings* is found in this paragraph [1529(a) of the 1930 act], and that it there has a definite meaning which is not broad enough to include everything that trims something is too clear to admit of serious controversy. Trimmings are narrow textile goods and are used in trimming wearing apparel and upholstery. * *

Deriving from the above the conclusion that "trimmings" under paragraph 1529(a) was intended to embrace "narrow fabrics only," the court then observed in *Starlight I* that the term "narrow fabrics" is not further defined in the 1929 Summary of Tariff Information in connection with the provision for trimmings. However, it did observe that that term was used in that Summary "as a descriptive term for various ribboned fabrics" and, "under that designation," found the following commentary at page 1582:

> Paragraph 913 includes narrow woven fabrics with fast edges which have not been ornamented after leaving the loom. * * *
>
> "Fabrics with fast edges not exceeding 12 inches in width" [specified in paragraph 913 of the Tariff Act of 1922], is an inclusive term for narrow woven fabrics, as distinguished from cloth which is a woven fabric over 12 inches in width. These narrow woven fabrics, such as tapes, ribbons, bandings, beltings, bindings, and webbings, are made on narrow-ware looms which produce a number of them simultaneously.

After additionally quoting a similar commentary in the Summary of Tariff Information, 1921, the court concluded:

> It is obvious that the added pieces of fabrics on the subject blouses were not the product of narrow-ware looms. They are quite clearly portions of the same fabrics which entered into the production of the blouses. This we conceive to be cloth as distinct from narrow wares and, hence, not "trimmings" as provided for in paragraph 1529.

The court in *Starlight I* thus derived a requirement that "trimmings" under paragraph 1529(a) be the product of a narrow-ware loom from a commentary on a tariff provision unrelated to and using different language than paragraph 1529(a). In effect, it equated an apparently sound limitation of "trimmings" within the paragraph to "narrow goods" that may be woven or "narrow textile goods" to a limitation that such trimmings meet the same requirements that the Summary of Tariff Information imposed on "Fabrics with fast edges not exceeding 12 inches." We think that reasoning is unsound. The Customs Court, in *Starlight III* and in the present cases, obviously came to the same conclusion in disavowing any "narrow-ware loom" requirement for the "trimmings" of paragraph 1529(a) which

might be drawn from the opinion in *Starlight I*.

The question remains whether *Starlight I* nevertheless supports the result that the court reached in the present cases. The reasoning in *Marubeni-Iida,* quoted above, indicates that the court was of the view that "so-called trimming made of the same material [as the garment] is not in and of itself trimming within the purview of paragraph 1529 (a)." However, it is apparent from the paragraph quoted immediately above from *Starlight I* that the court there based that proposition solely on the position that appendages of the same fabric as the garment fail to meet the requirement of being the product of narrow-ware looms because the cloth for the garment of which they are made is not such a product. The proposition that appendages of the same material as the garment cannot be trimmings under paragraph 1529(a) must therefore fall along with the requirement that such "trimmings" must be the product of narrow-ware looms.

Further attempting to support the decisions made below, the importers argue as another point in each appeal that the samples here are very potent witnesses and contend for example:

We submit that the sample clearly supports the holding of the Customs Court that the appendages (marked "X" on the sample), although they do not serve a utilitarian function, are used for the purpose of *styling* the garment. Implicit in that finding is the conclusion that they are not ornamental.

As this court has previously held, United States v. Hochschild, Kohn & Co., 31 CCPA 98, C.A.D. 255 (1943), although "the dictionary definitions of the term 'trimming' * * * are broad, * * * it is to be observed that * * * taken as a whole (it) clearly embraces the feature of ornamentation as a purpose in the application of the trimming element."

There are many non-functional features of a garment which are not trimmings although they may enhance the appearance of the garment and represent style variations. This would be true not only of various collar styles, but also the so-called "French" cuffs and front facing on a blouse.

This argument we likewise find insufficient to justify our sustaining the decisions under review. In *Hochschild,* this court reached its conclusion in "the light of the testimony concerning the nature and purpose" of scalloping on the baby clothing, there urged to be trimmings. Seemingly persuasive testimony that this scalloping had no independent preexistence and that its purpose was to reinforce the edge of the garments may well have been the compelling factor in the court's determination that it did not constitute trimmings. In the present cases, however, inspection of the exhibits in light of the unchallenged evidence that the appendages serve no utilitarian purpose leads us to share the Customs Court's conclusion that the "styling" provided by the appendages does enhance the appearance of the garments. It also satisfies us that the appendages possess "the feature of ornamentation as a purpose in [their] application" to the extent that such a requirement may be derived from the definitions of trimming relied on in *Hochschild.*[3] Noting further that there is no contention that the appendages are not narrow, we are convinced on the present record that they meet the requirements for "trimmings" under par-

---

3. Those definitions are:
   Webster's New International Dictionary—
   trimming. * * *
   2. That which serves to trim, make complete, ornament, or the like; esp., necessary or ornamental fittings or appendages, as of a garment; * * *.

   Funk & Wagnall's Standard Dictionary—
   trimming, * * * 1. Something added for ornament or to give a finished appearance of effect; that which embellishes or completes. (1) Material attached to a garment or the like for ornamentation.

agraph 1529(a) and that the importations were properly classified under that paragraph.

The judgment of the Customs Court is reversed in both appeals.

Reversed.