(C.D. 4360)

Shalom Baby-Wear, Inc. v. United States

United States Customs Court, Second Division

(Decided on remand June 27, 1972)

*Lane, Young & Fox (James G. McGoldrick* of counsel) for the plaintiff.
*Harlington Wood, Jr.,* Acting Assistant Attorney General (*Steven R. Sosnov*
and *Velta A. Melnbrencis,* trial attorneys), for the defendant.

Before Rao, Ford, and Newman, Judges

Ford, Judge: This case is before us, pursuant to an Order of Re-
mand by the United States Court of Customs and Patent Appeals,
dated June 10, 1971, for reconsideration of our decision in *Shalom
Baby-Wear, Inc.* v. *United States,* 63 Cust. Ct. 426, C.D. 3929 (1969),
in light of the appellate court's rulings in *United States* v. *Marubeni-
Iida (America) Inc., United States* v. *Miss Pat Fashions, Inc.,* 58
CCPA 118, C.A.D. 1015, 437 F.2d 1394 (1971).

No additional evidence has been adduced in the present case. Both
parties have, however, filed briefs in support of their respective posi-
tions. The issue presented is whether certain cotton knit polo shirts
with an overlay of knitted material, differing in construction from the
shirt, and which contains a screen printed emblem which is sewed
vertically to the placket of the shirt are wearing apparel in part of
trimming as provided for in paragraph 1529(a), Tariff Act of 1930,
as modified by the Sixth Protocol of Supplementary Concessions to
the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150,
T.D. 54108, and as such subject to duty at 45 per centum ad valorem,
or whether said shirts are knit outerwear in chief value of cotton as
provided for in paragraph 917, Tariff Act of 1930, as modified by
the Protocol of Terms of Accession by Japan to the General Agree-
ment on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, and as
made effective by the proclamation of the President, 90 Treas. Dec.
280, T.D. 53877, and as such subject to duty at 25 per centum ad
valorem.

The digest of the record and the statutory provisions have hereto-
fore been set forth in our prior decision, C.D. 3929, *supra,* and will
therefore not be repeated herein.

In the *Marubeni* case, *supra*, the imported merchandise consisted of a child's coverall with a horizontally-extended piece of the same material sewn to each side of the front. It was stipulated that it was classified as in part of trimming because of those two additional pieces. The record establishes that the pieces served no utilitarian purpose.

The merchandise in the *Miss Pat* case, *supra*, was a blouse having relatively small triangles sewed on the upper front portion. The triangles were of the same material as the blouse and the triangles served no utilitarian purpose.

The merchandise in the case at bar consists of a knit polo shirt composed principally of yellow knitted cloth having a collar, cuffs, and a placket of a brown and white knitted material, and an overlay on the placket of a yellow knitted material which is not the same fabric as the rest of the shirt. This additional strip of cloth is cut from piece goods and does not have fast edges. The question presented is whether a piece of cloth of different material, which is cut from piece goods and not from a narrow fabric, is for tariff purposes trimmings.

The court in the *Marubeni* and *Miss Pat* cases reviewed the opinion of this court, as follows:

> In *Marubeni-Iida* [62 Cust. Ct. 640, C.D. 3839 (1969)], the Customs Court first noted several cases in which it had held " 'so-called trimmings' made of the same material as the garment such as yokes, appendages, collars, etc. not to be trimmings as that term is used in paragraph 1529 (a)." These cases are *Starlight Trading, Inc.* v. *United States*, 45 Cust. Ct. 30, C.D. 2192 (1960) ; (hereinafter *"Starlight I"*) ; *Toyomenka, Inc.* v. *United States*, 51 Cust. Ct. 178, Abstract 67918 (1963) ; *Starlight Trading, Inc.* v. *United States*, 54 Cust. Ct. 398, Abstract 69253 (1965) (*"Starlight II"*) ; and *Starlight Trading, Inc., et al.* v. *United States*, 56 Cust. Ct. 851, Abstract 69760 (1966) ("Starlight III"). While acknowledging that in the first three of these cases the items in question "were not considered trimmings because they were not made from narrow-ware fabrics",[2] the court next quoted with approval an excerpt from *Starlight III* which stated that it did not intend in *Starlight I* to limit the provision of paragraph 1529 (a) to "narrow woven articles" * * *.
>
> [2] It is apparent from the record and the cited cases that the terms "narrow-ware fabrics," and "narrow woven fabrics" are used to designate fabrics woven on a "narrow-ware" loom as contrasted to a loom that produces wide fabrics or cloth.
>
> *        *        *        *        *        *        *
>
> The view that "trimmings" must be a product of a narrow-ware loom apparently originated with the Customs Court in *Starlight I*. The *Toyomenka* and *Starlight II* cases, *supra*, then followed this first case as controlling precedent. In *Starlight I*, the court noted the following definitions:

Summaries of Tariff Information (1948), volume 15, part 5, page 48:

> *Trimming.*—Narrow fabric used to trim or edge garments or upholstery; may be woven, braided, knit, or of lace of [*sic*] embroidery.

Summary of Tariff Information (1929),

> * * * Trimmings are narrow goods used to trim or edge garments or upholstery; they may be woven goods, or braid, or lace. * * *

The court also quoted the following from *United States* v. *Blefeld & Goodfriend*, 24 CCPA 213, T.D. 48658 (1936):

> The term *trimmings* is found in this paragraph [1529(a) of the 1930 act], and that it there has a definite meaning which is not broad enough to include everything that trims something is too clear to admit of serious controversy. Trimmings are narrow textile goods and are used in trimming wearing apparel and upholstery. * * *

Deriving from the above the conclusion that "trimmings" under paragraph 1529(a) was intended to embrace "narrow fabrics only," the court then observed in *Starlight I* that the term "narrow fabrics" is not further defined in the 1929 Summary of Tariff Information in connection with the provision for trimmings. However, it did observe that that term was used in that Summary "as a descriptive term for various ribboned fabrics" and, "under that designation," found the following commentary at page 1582:

> Paragraph 913 includes narrow woven fabrics with fast edges which have not been ornamented after leaving the loom. * * *

> "Fabrics with fast edges not exceeding 12 inches in width" [specified in paragraph 913 of the Tariff Act of 1922], is an inclusive term for narrow woven fabrics, as distinguished from cloth which is a woven fabric over 12 inches in width. These narrow woven fabrics, such as tapes, ribbons, bandings, beltings, bindings, and webbings, are made on narrow-ware looms which produce a number of them simultaneously.

After additionally quoting a similar commentary in the Summary of Tariff Information, 1921, the court concluded:

> It is obvious that the added pieces of fabrics on the subject blouses were not the product of narrow-ware looms. They are quite clearly portions of the same fabrics which entered into the production of the blouses. This we conceive to be cloth as distinct from narrow wares and, hence, not "trimmings" as provided for in paragraph 1529.

The court in *Starlight I* thus derived a requirement that "trimmings" under paragraph 1529(a) be the product of a narrow-ware loom from a commentary on a tariff provision unrelated to

and using different language than paragraph 1529 (a). In effect, it equated an apparently sound limitation of "trimmings" within the paragraph to "narrow goods" that may be woven or "narrow textile goods" to a limitation that such trimmings meet the same requirements that the Summary of Tariff Information imposed on "Fabrics with fast edges not exceeding 12 inches." We think that reasoning is unsound. The Customs Court, in *Starlight III* and in the present cases, obviously came to the same conclusion in disavowing any "narrow-ware loom" requirement for the "trimmings" of paragraph 1529 (a) which might be drawn from the opinion in *Starlight I*.

The question remains whether *Starlight I* nevertheless supports the result that the court reached in the present cases. The reasoning in *Marubeni-Iida*, quoted above, indicates that the court was of the view that "so-called trimming made of the same material [as the garment] is not in and of itself trimming within the purview of paragraph 1529 (a)." However, it is apparent from the paragraph quoted immediately above from *Starlight I* that the court there based that proposition solely on the position that appendages of the same fabric as the garment fail to meet the requirements of being the product of narrow-ware looms because the cloth for the garment of which they are made is not such a product. The proposition that appendages of the same material as the garment cannot be trimmings under paragraph 1529 (a) must therefore fall along with the requirements that such "trimmings" must be the product of narrow-ware looms.

In the case at bar, the polo shirt is knitted and the overlay, while also knitted, is admittedly of a different construction than the shirt. The latter material is cut from tubular piece goods and it is contended stiffens the placket and therefore serves a utilitarian purpose.

By virtue of the decision in the *Marubeni* and *Miss Pat* cases, *supra*, we hold that an addition to a garment from piece goods, which is narrow, may fall within the purview of trimmings. The involved appendages have been stipulated to be approximately 4½ inches long by 1³⁄₁₆ inches wide and hence are narrow goods.

The court in the *Marubeni* and *Miss Pat* cases further stated as follows:

* * * It also satisfies us that the appendages possess "the feature of ornamentation as a purpose in [their] application" to the extent that such a requirement may be derived from the definitions of trimming relied on in Hochschild. * * *

* * * we are convinced on the present record that they meet the requirements for "trimmings" under paragraph 1529 (a) and that the importations were properly classified under that paragraph.

The contention and the testimony, which is merely advisory, that the appendage tends to stiffen the placket and is consequently a utilitarian feature, are not convincing.

We, therefore, overrule the claim in the protest. Judgment will be entered accordingly.