The UNITED STATES, Appellant,

v.

ENDICOTT JOHNSON CORPORATION, Appellee.

Appeal No. 79–19.

United States Court of Customs and Patent Appeals.

March 13, 1980.

---

Alice Daniel, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Director, New York City, Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, New York City, Madeline B. Kuflik, Commercial Litigation Branch, New York City, attorneys of record, for appellant.

John S. Rode, New York City, attorney of record, for appellee; Michael S. O'Rourke and Patrick D. Gill, New York City, of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Judges, and FRIEDMAN,* Chief Judge.

* The Honorable Daniel M. Friedman, Chief Judge, United States Court of Claims, sitting by designation.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, 470 F.Supp. 845, 82 Cust.Ct. ——, C.D. 4787 (1979), sustaining appellee's claim that the imported merchandise, stitched cotton shoe uppers, is properly classifiable as unornamented rather than as ornamented textile articles. We affirm.

### The Imported Merchandise

The involved merchandise comprises cotton canvas shoe uppers imported by appellee from Japan in 1972. The uppers were of both low cut (oxford) and high top construction. Two parallel rows of stitching extend across the eyelets nearest the user's ankle to the midpoint of the arch area. (See illustration in opinion below.) In the footwear trade these stitches are referred to as "arch stitching." These goods, when used, were stitched to soles in the domestic manufacture of sneakers.

### Statutory Provisions

The merchandise was classified by customs under item 380.00 of the Tariff Schedules of the United States (TSUS). At trial, however, appellant abandoned that classification and asserted that the proper classification was under item 386.04. Appellee's contention that the goods are properly classifiable under item 386.50 was sustained by the Customs Court. The relevant tariff provisions read as follows:

Schedule 3 Headnotes:

\* \* \* \* \* \*

3. For the purposes of the tariff schedules—

(a) the term *"ornamented"*, as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

(i) fibers, filaments (including tinsel wire and lame), yarns, or cordage, any of the foregoing introduced as needlework or otherwise, including—

\* \* \* \* \* \*

(B) other types of ornamentation, *but not including functional stitching* or one row of straight hemstitching ajoining a hem [emphasis ours];

\* \* \* \* \* \*

Schedule 3, Part 7, Subpart B:

Subpart B headnote:

1. This subpart covers articles, of textile materials, not covered elsewhere in the tariff schedules.

———————

Articles not specially provided for, of textile materials:

Lace or net articles, whether or not ornamented, and other articles ornamented:

| | | |
|---|---|---|
| 386.04 | Of cotton .................. | 40% ad val. |

\* \* \* \* \* \*

Other articles, not ornamented:

Of cotton:

\* \* \* \* \* \*

| | | |
|---|---|---|
| 386.50 | Other .................. | 14% ad val. |

### Customs Court

The Customs Court, after receiving the testimony and evidence on whether the arch stitching is ornamental, concluded that appellee had proved the stitches were primarily functional, not ornamental, by a preponderance of the credible evidence. The primary purpose of the stitches was considered determinative of ornamentation in light of the definition set forth in *The Baylis Brothers Inc. v. United States*, 60 Cust.Ct. 336, 341, C.D. 3383, 282 F.Supp. 791, 796 (1968), *affirmed*, 56 CCPA 115, C.A.D. 964, 416 F.2d 1383 (1969). Both the claimed motivation and the resultant effect were said to converge to form footwear with strengthened uppers. The testimony of appellee's employee responsible for the imported goods and the evidence of advertising employed by subsequent purchasers were held to be persuasive of the convergence.

Appellant asserted below that the test for ornamentation is necessity rather than functionality. The stitches were said to be functional only if *necessary* for the functionality of the uppers alone. The court rejected this test as too narrowly constricting the term "functional." The proper question was held to be simply whether *stitching* is functional.

Furthermore, the court concluded that any ornamentation provided by the arch stitches is not encompassed by the term "ornamented" in TSUS. Incidental ornamentation not having a primary adorning effect was held to be removed from the class of ornamented articles, *Blairmore Knitwear Corp. v. U. S.*, 60 Cust.Ct. 388, C.D. 3396, 284 F.Supp. 315 (1968). Particularly noted were the questionable visibility of white stitches on white sneakers, as in 80 per cent of the articles in issue, and the minimal distinction of a contrasting arch stitch versus a similarly colored stitch which is undoubtedly functional.

The court cited *Colonial Corp. of America v. United States*, 62 Cust.Ct. 502, C.D. 3815 (1969), where a double row of nonfunctional, reddish stitching disposed on the back of girls' blue denim shorts was found to be ornamental, no primary function having been established for stitches which were held to be eye-catching and notably conspicuous.

## OPINION

The dispute here focuses on the meaning of "ornamented" in schedule 3 of the TSUS.

We agree with the Customs Court's analysis. The first question is: Does the addition of arch stitches impart no more than an incidental, decorative effect? The next question is: Do the stitches have a functionality which is primary to any ornamentative nature?[1] An affirmative answer to either results in a nonornamental classification. If the former is resolved first, however, the latter may no longer be critical to a determination.

■ The ornamental effect of the arch stitches is a question of fact determined by the Customs Court. Its determination stands unless it is shown that it is either without supporting evidence or is clearly contrary to the weight of the evidence. *Pistorino & Co. v. United States*, 66 CCPA —, C.A.D. 1234, 607 F.2d 989 (1979).

■ We adopt both the reasoning and finding of the Customs Court regarding the nonornamental nature of the stitched goods. Appellant argues that "Congress did not intend that an importer could defeat classification as 'ornamented' merely by proving that stitching provides additional strength." But neither did Congress intend that all forms of stitching be *per se* ornamental unless proved to have a function. If the importer, by a preponderance of the evidence, proves any ornamentative aspects to be incidental, added proof of functionality is not mandated.

■ Since the Customs Court addressed functionality, we will briefly discuss this issue. The Court was correct in its finding that the stitches were primarily functional. The purpose of the stitching is evidenced by the resultant effect, *The Baylis Brothers Inc. v. United States*, supra. As set forth in the testimony, the instant stitching was an economic expedient. The alternative was to employ a heavier and more expensive army duck material to achieve at least equal strength.

■ At oral argument appellant urged that since the usual function of stitching is to attach, connect, or join, stitching is "functional" only if it serves one of those purposes. There is no indication, however, that Congress intended the term "functional" to have that narrow a meaning. The distinction Congress drew was between stitching that is ornamental and stitching that is "functional," and not among the

---

1. The rationale for finding the primary nature of the stitching, i. e., adornment versus function, is manifested in the Explanatory Notes of Schedule 3 in the Tariff Classification Study compiled for Congress by the United States Tariff Commission. The provisions for ornamented articles are derived from Par. 1529(a) of the Tariff Act of 1930. More particularly,

Under the proposed definition of "ornamented", textile articles would *no longer be*

assessed with rates of duty derived from paragraph 1529(a) on the basis of concealed, functionless pieces of braid, netting, etc. The rates derived from paragraph 1529(a) *would apply only if such materials were used primarily for ornamentation.* [Emphasis ours.] [Tariff Classification Study, Schedule 3, p. 7 (1960).]

different functions that stitching may perform. Stitching that serves a significant purpose with respect to the character, construction, or manufacture of an article—such as strengthening the material, enabling the manufacturer to produce the product more efficiently or cheaper, or producing a better product—is "functional" and not merely ornamental.

Appellant contends that the proof of functionality is based upon an invalid procedure. Again, we look to the record. Mr. Chase, one of appellant's witnesses, absolutely agreed that the imported merchandise may be effectively tested without using either a Federal test or standard.[2] No clear rebuttal of the validity of the test procedure has been presented to this court.

Having affirmatively answered both of the introductory questions, the Customs Court was correct in holding TSUS 386.50, "not ornamented," to be the proper classification. Its judgment is *affirmed*.

MILLER, Judge, dissenting.

The Customs Court concluded, as a matter of law, that appellee's imported uppers are "not ornamented" and are properly classified under item 386.50, TSUS. This rested on its finding that a preponderance of the evidence demonstrates that the stitching in question is "primarily functional" (*i. e.*, utilitarian) and "not ornamental" (*i. e.*, not decorative). On review, the ultimate question is whether the Customs Court's conclusion of law is correct. However, the first question is whether there is substantial evidence that the stitching in question is primarily utilitarian.[1] As will be explained below, I am satisfied that the answer is in the negative.

**2.** Mr. Chase was Division Manager of Quality Assurance for the footwear division of Uniroyal Inc. He testified that the Uniroyal lab performs hundreds of different types of tests on canvas footwear.

**1.** The Customs Court noted that the arch stitching in issue is presumed to be ornamental and that it was plaintiff's (now appellee's) burden to prove that the arch stitching is functional (*i. e.*, utilitarian) *and* not ornamental (*i. e.*, not decorative).

## Evidence of Economic Purpose or Effect Irrelevant

In adopting the reasoning of the Customs Court, the majority opinion states:

> As set forth in the testimony, the instant stitching was an economic expedient. The alternative was to employ a heavier and more expensive army duck material to achieve at least equal strength.[2]

The Customs Court reasoned:

> By strengthening the fabric of which the uppers were made, the arch support stitching permitted the plaintiff to substitute a lower cost fabric and thereby reduce the cost of the footwear ultimately produced from the imported uppers. Clearly, achieving an economic benefit by using arch support stitching cannot be characterized as an "ornamental" or "decorative" purpose.

While it may be true that "achieving an economic benefit" cannot be characterized as an "ornamental" or "decorative" purpose, it was clear error for the court to conclude: "To that extent [achieving an economic benefit], the stitching clearly performs a functional purpose." As ruled by this court's predecessor,

> It is rather the result produced and apparent upon the wares which must determine the classification [as "ornamented" or "not ornamented"]

. . . . .

This rule was recently repeated by the Customs Court in *Excelsior Import Associates, Inc. v. United States*, 79 Cust.Ct. 144, 148, C.D. 4726, 444 F.Supp. 780, 783 (1977), aff'd 66 CCPA ——, C.A.D. 1212, 583 F.2d 513 (1978):

**2.** Appellee's president, Harold McGowan, testified that to meet the retail "price point" requirement of its customer, W.T. Grant Co., it was decided to not use army duck fabric, "the strongest type of upper material, but . . . a lot more expensive" (25 cents per pair more than the fabric in the involved merchandise), and to add the arch stitching (at a cost of 2½ cents) "which would reinforce this point, which gets the most pressure when you . . . lace this shoe."

[I]t is the resulting effect upon the merchandise, and not the intention of the manufacturer, which controls classification. *Colonial Corp. of America v. United States, supra* [62 Cust.Ct. 502, 504–05, C.D. 3815 (1969)] . . . .

### Evidence of Motivation Irrelevant

Based on evidence of record, appellee makes such assertions as: "this was the purpose [*i. e.*, making a stronger shoe] for which the 'arch stitching' was employed"; "Appellee caused arch stitching to be placed on each upper for the specific purpose of adding strength"; "The tie-on tag [stating "ARCH STITCHING INSURES UPPER STRENGTH"] . . . which was placed on every pair of W.T. Grant sneakers made with Horoaka uppers, illustrates how Endicott's purpose was conveyed to the public." However, as stated by the Customs Court in *Excelsior Import Associates, Inc., supra*, it is the effect upon the merchandise and not the intention of the manufacturer which controls classification. Similarly, in *The Baylis Brothers, Inc. v. United States*, 60 Cust.Ct. 336, 341, C.D. 3383, 282 F.Supp. 791, 796 (1968), *aff'd* 56 CCPA 115, C.A.D. 964, 416 F.2d 1383 (1969), the Customs Court stated:

> [T]he evidentiary issue . . . is whether the primary purpose of the stitching is for decoration rather than utility. The term "purpose" as used here . . . must, of course, be understood to mean function rather than the subjective intent of the manufacturers. It is the resultant effect of, and not the claimed motivation for, the stitching which determines the issue.

Clearly, a subjective motivation test would be administratively unworkable.

### Evidence of Some Strengthening Effect Insufficient

As related in the majority opinion, appellant argues that "Congress did not intend that an importer could defeat classification as 'ornamented' merely by proving that stitching provides additional strength." The argument is valid. How could it be said that stitching is utilitarian if the added strength is superfluous to the requirements of the article?[3] To do so would exalt form over substance contrary to the business purpose test in revenue law administration. *Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). The majority opinion's response to appellant's argument is that "neither did Congress intend that all forms of stitching be *per se* ornamental unless proved to have a function." However, this overlooks that the statute (Headnote 3(a)(i)(B) of Sch. 3, TSUS), under the doctrine of *expressio unius est exclusion alterius* (*see National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974)), demonstrates a Congressional intent that all stitching be considered to provide a decorative effect unless proved to be "functional stitching or one row of straight hemstitching adjoining a hem." *See United States v. Field & Co.*, 7 Ct.Cust.Appls. 430, 431, T.D. 36985 (1917); *Morris Friedman & Co. v. United States*, 69 Cust.Ct. 184, 187, C.D. 4392 (1972). Thus, the Customs Court clearly erred in stating that—

> even if the utility of arch stitching had not been shown, it is clear . . . that because arch stitching does not adorn or embellish the upper in a commercially meaningful manner, the stitch is not ornamental.

If appellee failed to sustain its burden to show the purposeful utility needed to support its claimed classification, that is the end of the case. *Compare* note 1, *supra*.

Appellee cites *Blairmoor Knitwear Corp. v. United States*, 60 Cust.Ct. 388, 392–93, C.D. 3396, 284 F.Supp. 315, 318 (1968), for the court's statement that the headnote

---

**3.** The Customs Court said that "under defendant's reasoning, a shirt with pockets would be considered ornamented by virtue of the pockets alone because the pockets are unnecessary for a shirt to function as a shirt." However, the point is not well taken, since the pockets would be necessary for a shirt to function as *a shirt equipped to carry small articles* (e. g., pen, pencil, package of cigarettes, Kleenex tissues).

does not *define* "ornamented," and that Congress did not attempt to label all braid, or all fringe, or all edging, for example, "ornamentation," but "only such as in fact served to provide a decorative effect." However, as pointed out by appellant, the court in *Blairmoor* overlooked that the *Tariff Classification Study*, Explanatory Notes to Schedule 3, p. 7 (1960), clearly shows that the headnote was intended by Congress [4] to constitute a very broad *definition* of what constitutes ornamentation:

> In addition, paragraph 1529(a) [Tariff Act of 1930] presently covers textile articles which have been embroidered or ornamented in certain ways. In the proposed provisions, the primary intention of paragraph 1529(a) is preserved intact by the development of a broad concept of ornamentation which is set forth in the *definition* of "ornamented" in headnote 3. . . . [Emphasis supplied.]

To the extent that *Blairmoor* conflicts with the rule of statutory construction recited in *National Railroad Passenger Corp., Field,* and *Friedman, supra,* it should be overruled.

I agree with the majority opinion's statement that stitching that "serves a significant purpose" with respect to the character or construction of an article is "functional." However, appellee produced no evidence that the additional strength provided by the arch stitching [5] bears a purposeful relation to the requirements of appellee's sneakers. Moreover, at oral argument, appellee's counsel admitted that there was *no evidence* to show that two single rows of stitching, instead of the two double rows, would not have been sufficient to enable replacement of the more expensive duck; further, that it was appellee's burden to show that the double rows were required. On the other hand, there is substantial evidence that the arch stitching was not purposeful in relation to the *requirements of the sneakers or for replacement of the more expensive duck.* Mr. McGowan stated that the arch stitching was used to reinforce the upper at the point "which gets the most pressure when you go to lace this shoe" and "you jerk on the laces." However, there is *no evidence* showing the amount of force applied in this area, and Mr. McGowan testified that he did not know how many pounds of pressure are applied when a show is being laced. Appellant's witness, Robert Chase, Division Manager of Quality Assurance of Uniroyal, Inc., estimated that a pressure of only approximately ten pounds ("pulling force" is how appellee expresses it) is applied when shoes are being laced. Appellant's witness, Dan McCarthy, Manager of Product Development (Footwear) of Converse Rubber Co., testified that the instep area (the location of the arch stitches) is not a critical stress area. Appellant's witness, Dr. Clifton Scaggs, a podiatrist, testified that the arch area, in the normal situation, does not bear weight; also, that the arch of the normal foot does not need support. Such evidence shows that the

---

4. The *Tariff Classification Study* constitutes legislative history for the provisions of the TSUS. *Certified Blood Donor Services, Inc. v. United States,* 62 CCPA 66, 70, C.A.D. 1147, 511 F.2d 572, 575 (1975).

5. The Customs Court found that in the tests conducted by appellee the portions of the uppers without arch stitching broke on the average at 64 pounds pressure; while the portions of the uppers with the arch stitching broke on the average at 102 pounds pressure. Further, in the tests conducted for appellant by Uniroyal, the portions of the uppers without arch stitching broke on the average at 70 pounds pressure; while the portions of the uppers with the arch stitching broke on the average at 90 pounds pressure. Appellant makes the point that appellee's tests were conducted first on uppers with arch stitching and then on uppers with the arch stitching removed, which left small holes in the fabric that would have weakened it, resulting in a wider disparity between the breakpoints of the stitched and unstitched fabrics. Appellant also argues that, for various other specified reasons, the test results relied upon by appellee and the Customs Court do not constitute reliable evidence, but this issue need not be decided. I am satisfied that the arch stitching had *some* strengthening effect, and appellant's witness Chase so testified. Appellee points out that the uppers in issue are composed of two layers of fabric joined by an adhesive, the separation of which is "discouraged by the presence of the arch stitching." This, of course, would be reflected in a higher breakpoint.

strength of the *unstitched* fabric (breakpoint at 64 pounds pressure in appellee's tests or 70 pounds pressure in appellant's tests) is, if anything, more than adequate to meet the requirements of appellant's sneakers—indeed, *more than adequate to enable replacement of the expensive duck.* Thus, a presumption (not rebutted) is raised that the strength added by the arch stitching was superfluous.

In view of the foregoing, it must be concluded that the finding of the Customs Court that the stitching in question is primarily utilitarian is not supported by substantial evidence. In my judgment, this is all that is required (following the rule of statutory construction recited in *National Railroad Passenger Corp., Field,* and *Friedman, supra*) to support a holding that the Customs Court erred in concluding that appellee's imported uppers are "not ornamented" for purposes of item 386.50, TSUS. However, both the Customs Court (note 1, *supra*) and the majority opinion have treated Headnote 3(a)(i)(B) of Sch. 3 as merely establishing a rebuttable presumption that all stitching is ornamental unless proved to be functional. For the sake of argument, and reemphasizing that appellee's failure to sustain its burden to show the purposeful utility needed to support its claimed classification ends the case, we will consider whether there is substantial evidence to rebut such a presumption in this case.

### Evidence of Nondecorative Effect Insufficient

The Customs Court's rationale for finding that the arch stitching is not decorative is expressed in its statement that—

> it must be concluded that adornment or decoration is not the arch stitching's primary effect. Significant in this respect is Mr. McGowan's testimony that 80 percent of the sneakers in issue were white with white arch stitching and that since the arch stitching was also white, it was not readily visible.

However, Mr. McGowan subsequently admitted that when trying on the sneakers *the customer* would see the stitching. Appellee's witness, John Galli, an account ex-ecutive responsible for appellee's business dealings with Montgomery Ward Co. and formerly with appellee's W.T. Grant Division, testified that if red stripes were put on the uppers primarily to enhance the appearance and to *attract a customer,* but incidentally happened to make the uppers stronger (although that was not the intention), he would consider the stripes decorative, "if that was the intention." Although the question and answer indicated confusion over the irrelevance of motivation, it is clear that Mr. Galli would regard the appearance *to a customer* as sufficient to support a conclusion that the effect was decorative. Thus, the "significance" of Mr. McGowan's testimony that the white arch stitching on uppers of a white sneaker was not readily visible was negated by both Mr. McGowan himself and by Mr. Galli—appellee's own witnesses.

Mr. McCarthy testified that there was no requirement he knew of in the footwear industry that ornamentation be visible "from afar," and that the consumer, to whom white stitching on a white canvas sneaker would be visible, is the one to whom design of a product would be directed. Mr. Chase stated that, in his opinion, stitching is still decorative, according to industry standards, even though only visible to the wearer at a distance of a few feet; also, that decorative stitching need not be a contrasting color with the shoe.

Mr. McCarthy stated that, so far as his company was concerned, adding any stitching except white to appellee's white sneaker would detract from eye appeal and expressed his opinion that making the arch stitching in color would present a gaudy appearance and detract from the general acceptance of the sneaker "appearance wise." He added that when his company tried to do the stitching in colors, "our sales and marketing people felt it cheapened the appearance . . . ." His testimony, that in his opinion the trade would consider a white star and a white chevron shown on a catalog picture of a white canvass Chris Everett tennis shoe to be decorative, was not challenged. Appellee has shown no re-

quirement in the footwear trade that a decorative feature be of a different color than that of the article with which it is associated, and the case law indicates that there is no such requirement. *United States v. Marubeni-Iida (American), Inc.*, 58 CCPA 118, C.A.D. 1015, 437 F.2d 1394 (1971); *United States v. Florea & Co.*, 25 CCPA 292, T.D. 47244 (1934); *Shalom Baby-Wear, Inc. v. United States*, 68 Cust.Ct. 197, C.D. 4360 (1972); *The Baylis Brothers, Inc. v. United States, supra.* Both Mr. McCarthy and Mr. Chase had spent their entire careers in the footwear industry and were familiar with the trade practice with respect to decoration or design.

Also apparently significant to the Customs Court in its finding that the arch stitching is not decorative are several cited Treasury decisions, ruling that portions of a garment which simulated a functional element of the garment did not ornament the garment. Assuming that the arch stitching simulates an additional reinforcement on the sneakers, this cannot preclude classification as ornamented, because Headnote 3(a)(i)(B) only excludes "functional stitching" and does not exclude stitching that merely simulates a functional element.

Accordingly, I have concluded that there is not substantial evidence to rebut a presumption that the arch stitching is ornamental.

The Customs Court's conclusion that appellee's imported uppers are "not ornamented" and are properly classified under item 386.50, TSUS, is incorrect and should, be reversed.