**NISSHO–IWAI AMERICAN CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

Court No. 84–4–00594.

United States Court of International Trade.

March 31, 1987.

Stein Shostak Shostak & O'Hara (James F. O'Hara), Los Angeles, Cal., for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civil Div., Dept. of Justice (Michael P. Maxwell), New York City, for defendant.

## OPINION

TSOUCALAS, Judge:

This action is before the Court for decision after trial. It presents a novel question concerning the dichotomy created by Schedule 3, TSUS, and relevant case law, between ornamented and nonornamented apparel.

### Background

The subject merchandise consists of children's warm-up suits embroidered with a trademark of Nike, Inc.[1] ("Nike") on the chest portion. The entries were liquidated in 1983 under the following provision for ornamented apparel:

1.

Women's, girls', or infants' lace or net wearing apparel, whether or not ornamented, and other women's, girls', or infants' wearing apparel, ornamented:
    Of man-made fibers:
        Knit:
            Blouses, body suits and body shirts, shirts, and sweaters
                Blouses:
                    Other:

| Item 383.18 | Girls' and Infants' | 40% ad val. |
|---|---|---|

Plaintiff, Nissho-Iwai American Corp. ("Nissho"), imports the warm-up suits on behalf of Nike. It contends that the presence of a trademark changes the character of the garment by denoting its source of origin. Therefore, the subject goods should be classified as nonornamented pursuant to the following provision:

Other women's, girls', or infants' wearing apparel, not ornamented:
    Of man-made fibers:
        Knit:
            Blouses, body suits and body shirts, shirts, and sweaters
            . . . .
        Shirts:
            . . . .
        Other:

| Item 383.80 | Girls' and Infants' | 21¢ per lb. + 32.5% ad val. |
|---|---|---|

## Issue Presented

Is the warm-up suit ornamented within the meaning of Schedule 3, TSUS, by the presence of a Nike trademark embroidered on the chest portion of the garment?

## Discussion

This Court has had recent occasion to discuss the legal standards for classifying textile features as ornamental. *See Gelmart Indus. v. United States*, 11 CIT —, 655 F.Supp. 482 (1987); *Generra Sportswear Co. v. United States*, 10 CIT —, Slip Op. 86–133 (Dec. 16, 1986) [Available on WESTLAW, DCT database]. Accordingly, the applicable principles are only briefly reviewed for the purposes of this opinion.

### A. *Decorative Effect*

The bipartite test outlined in *United States v. Endicott Johnson Corporation*, 67 CCPA 47, C.A.D. 1242, 617 F.2d 278 (1980), directs the Court to consider initially whether the feature at issue imparts "no more than an incidental, decorative effect". *Endicott Johnson*, 67 CCPA at 50, 617 F.2d at 281. Regardless of any functional purpose, only those features that "in fact serve[ ] to provide a decorative effect" fall within the definition of ornamentation. *Blairmoor Knitwear Corp. v. United States*, 60 Cust.Ct. 388, 393, C.D. 3396, 284 F.Supp. 315, 318 (1968).

It is beyond dispute that ordinarily tariff terms are interpreted according to their common and commercial meaning, which are presumed to be identical. *Nippon Kogaku (USA), Inc. v. United States*, 69 CCPA 89, 92, App. No. 81–29, 673 F.2d 380, 382 (1982). Further, while testimony of witnesses may provide guidance, it remains the province of the court to ascertain the meaning of such terms. *See Absorbo Beer Pad Co. v. United States*, 30 CCPA 24, 30, C.A.D. 209 (1942); *United States v. Florea & Co.*, 25 CCPA 292, 296, T.D. 49,896 (1938). "The word 'ornament' has

customarily been construed in accordance with its dictionary meaning, to embrace that which enhances, embellishes, decorates, or adorns." *Blairmoor*, 60 Cust.Ct. at 395, 284 F.Supp. at 320. In the instant case, it is clear that the embroidered trademark ornaments the warm-up suit. The Nike logo appears either in blue or pink raised stitches in sharp contrast to what is otherwise a plain, gray background. *Compare Endicott Johnson*, 67 CCPA at 49, 617 F.2d at 281 (white stitching on white sneakers held not to be decorative) *with Colonial Corp. v. United States*, 62 Cust.Ct. 502, 503–04, C.D. 3815 (1969) (double row of reddish stitching on denim jeans held to be decorative). The insignia adorns the garment in a manner that "conforms to ordinary concepts of ornamentation." *Brittania Sportswear v. United States*, 5 CIT 212, 214 (1983). This is confirmed by the persuasive testimony of defendant's witness, Mr. Irwin A. Kahn, Dean of Business and Technology at the Fashion Institute of Technology in New York City, who was designated an expert in the wearing apparel industry. He testified that the insignia "stands out from the shirt and makes it more decorative." Trial Transcript at 151–52 (hereinafter "Tr. at ___"). Viewing the cold record in its entirety, the Court concludes that plaintiff has failed to prove, by a preponderance of the credible evidence, that the insignia is only incidentally decorative.[2]

## B. *Functionality*

■ The more substantial question in the case at bar relates to the second prong of the aforementioned *Endicott Johnson* test, which mandates consideration of whether a given feature is primarily functional or ornamental.[3] *Endicott Johnson*, 67 CCPA at 50, 617 F.2d at 281. Those decorative features which are primarily functional are classified as nonornamental. Functional textile features have been described as those serving a significant purpose with respect to the character, construction, or manufacture of an article. *Endicott Johnson*, 67 CCPA at 51, 617 F.2d at 282. It is functional capability, together with the appropriateness of that function to the garment, which determines whether or not the feature is functional. *Ferriswheel v. United States*, 68 CCPA 21, 25, C.A.D. 1260, 644 F.2d 865, 867 (1981).

■ The feature at issue is a registered trademark. Plaintiff's Exhibit 3. It is agreed by the parties that the trademark serves no independently quantifiable function with regard to the performance of the article as an item of wearing apparel. Tr. at 25, 61. For example, it does not improve the fit, nor strengthen the garment. Plaintiff argues, however, that the presence of the trademark serves, *inter alia*, as a form of corporate identification and enhances the saleability of the merchandise. *Plaintiff's Post-Trial Brief* at 45. *See generally* 3 L. ALTMAN, CALLMANN UNFAIR COMPETITION, TRADEMARKS & MONOPOLIES § 17.01 at 2 (4th ed. 1983) (three basic trademark purposes: indicator of origin or ownership, guarantee of consistent quality, medium of advertisement). It was explained at trial that Nike promotes its trademark a great deal through advertising. An extensive effort is made to identify the name Nike with celebrated athletes and with the concept of athletic

---

**2.** The Court is not persuaded by the testimony of plaintiff's witnesses on this issue. Additionally, while there was some testimony that, in a purely subjective sense, the logo was not considered aesthetically attractive, Tr. at 24, 55, plaintiff's witnesses blurred what should be separate inquiries into decorativeness and functionality by indicating that the feature's allegedly functional nature rendered it not decorative. *See, e.g.*, Tr. at 38, 55. This is particularly obvious from the testimony of Mr. Julius R. Lunsford, Jr., a trademark attorney with no particular expertise involving wearing apparel. He apparently would evaluate decorativeness in terms of whether or not a given design was a registered trademark. *See, e.g.*, Tr. at 95, 122–23 (decoration is adornment as distinguished from trademark), 133–35 (feature ornamental if it doesn't identify the garment or serve as trademark of another article).

**3.** It is necessary to consider the question of functionality given the determination as to decorativeness. *Cf. Endicott Johnson*, 67 CCPA at 50, 617 F.2d at 281 (where feature is only incidentally decorative, proof of functionality not required); *Generra Sportswear Co.*, Slip.Op. 86–133 at 7.

prowess. Tr. at 19, 51–52, 56. Plaintiff's witness, Ms. Laurie Gribling, a former employee of Nike, and designer of the subject garments, explained the role of the Nike logo in the following colloquy:

Q. (Mr. O'Hara) If the logo were removed, how would that change the garment?

A. (Ms. Gribling) It would not change the function of the garment; it would change, I think, the character of the garment.

Q. (Mr. O'Hara) In what respect?

A. (Ms. Gribling) Well, you can walk into many stores and see this same garment without that logo there. I think that putting that logo on the garment gives it a character that isn't there without the logo, that's why Nike spent all the millions of dollars they have with the advertising campaigns that they have done. I think that to a consumer that logo does change the character of the garments. It doesn't change the function. It makes them associate themselves with the athletes that they have seen wearing these kinds of things, and that is the reason that the—that's how it changes the character.

Tr. at 25–26.

The trademark, prominently displayed in color on the chest portion of the garment, identifies the garment as one produced under license from Nike, concomitantly evoking the perceptions engendered in potential purchasers by Nike's extensive marketing program. It also informs others of the consumer's decision to purchase a product bearing the Nike insignia. Plaintiff suggests that "[i]t would be absurd to argue that unbranded merchandise is of the same character as merchandise carrying the brand or trademark of a well established product source." *Plaintiff's Post-Trial Brief* at 46. Thus, it is the change in the product's character which, in plaintiff's view, qualifies the use of the trademark as functional within the standard developed in *Endicott Johnson.*

The Court holds that in the instant case the embroidered trademark is ornamentation. The mark has no objectively demonstrable effect with regard to the garments. The effect of the trademark is based entirely on a perception cultivated in the minds of consumers through advertising. Tr. at 61. Indeed, it is difficult to distinguish the "function" performed by the trademark from that performed by features which are admitted to be ornamentation. Ms. Gribling testified on direct examination that the use of the trademark on the warm-up suits was not decoration and was "strictly for corporate identification." Tr. at 24. On cross-examination, Ms. Gribling was shown a catalogue entitled "NIKE FALL '83 SPORTS APPAREL," which contains photographs of models wearing sportswear with the Nike insignia. Plaintiff's Exhibit 5. One photograph depicted a child wearing a warm-up suit. On the sleeve appeared the word "Nike" in large white lettering against a red background. Ms. Gribling testified that this use of the word was decorative, even though the use of the trademark on the chest portion was, in her view, functional. Tr. at 35–38. The Court can discern no material difference between the two uses of the name Nike.[4] There is no evidence to indicate that the allegedly functional use of the corporate name (appearing as a trademark on the chest area) alters the character of the garment in a different fashion than the admittedly decorative use of that same name (appearing on the sleeve). In other words,

---

**4.** Ms. Gribling proffered the following unconvincing distinction:

Q. (Mr. Maxwell) Why do you believe the "Nike" is decoration, that's on the sleeve?

A. (Ms. Gribling) Because it's done in a different way than the corporate logo. It's done for aesthetics there.

Tr. at 37. At best, this demonstrates the intention to achieve a different effect. It in no way proves that such is the actual effect on the merchandise. *See Gelmart Indus. v. United States,* 11 CIT at —— 655 F.Supp. at 485 (citing *Excelsior Import Assocs. v. United States,* 79 Cust.Ct. 144, 148, C.D. 4726, 444 F.Supp. 780, 783 (1977), *aff'd per curiam,* 66 CCPA 1, C.A.D. 1212, 583 F.2d 513 (1978)); *Baylis Bros. v. United States,* 60 Cust.Ct. 336, 341, C.D. 3383, 282 F.Supp. 791, 796 (1968), *aff'd,* 56 CCPA 115, C.A.D. 964, 416 F.2d 1383, *reh'g denied,* 56 CCPA 115 (1969).

any good will associated with the name Nike is conveyed equally in both cases.

Plaintiff's assertion that consumers rely on the visibility of the trademark to ensure that they are getting genuine Nike goods is undermined by the fact that textile fiber products are required to contain a product label, usually placed in the neck area, indicating the manufacturer. 15 U.S.C. § 70b(b)(3) (1982). This label is in fact more informative than the trademark, since Nike, like many other trademark owners, licenses the use of its name on a variety of goods which it does not actually manufacture. Tr. at 152. Against this background, it becomes obvious that the prominent display of the trademark serves only to reveal to others that a consumer chose to purchase a garment ornamented with the Nike insignia. In the words of plaintiff's witness Mr. Guy B. Day, who formerly developed advertising campaigns for Nike: "It's essentially an ego thing.... That says something about the wearer; to those who look at the wearer." Tr. at 53.

Defendant's witness Mr. Kahn offered largely unchallenged [5] testimony contradicting plaintiff's contentions. He explained that corporate logos are frequently used as ornamentation. Tr. at 156, 164.

In particular, the trademark appearing on the subject garments is ornamental. Tr. at 151–52, 165. Based on his knowledge of the wearing apparel industry, the embroidered insignia in this case would be considered nonfunctional since it has no measurable impact with regard to actual use of the garment. Tr. at 144–45, 165. Finally, Nike's marketing efforts aimed at building a psychological link between the product and athletic accomplishment is consistent with the manner ornamentation is frequently employed. Tr. at 152.

While the instant question is one of first impression,[6] consideration of decisions construing provisions of prior tariff acts reveals no conflict with this Court's decision. In *Koscherak v. United States,* 98 F. 596 (2d Cir. 1899), the court considered the classification of a glass bottle containing the figure of a woman and the words "Hygeia" and "Trade-Mark" above a scrolled base imprinted with the name and address of the bottler. *Id.* at 597–98. The court affirmed a lower court decision that the bottle was ornamented.[7] More significantly, the Second Circuit panel noted that the design was no less ornamental "because it happens to be a trade-mark." *Id.* at 600.[8] The Board of General Appraisers,

---

5. Cross-examination of Mr. Kahn consisted essentially of probing his understanding of the term ornamental and revealing that he had not been employed in the advertising business, and had not personally dealt in Nike brand merchandise at the wholesale level. In addition, Mr. Kahn said that he had conducted some investigation into the field of trademarks in connection with his duties as a professor but acknowledged that he was not an expert in that area. Tr. at 166–68. The Court, having carefully considered the testimony given at trial and having thoroughly reviewed the trial transcript, finds Mr. Kahn to be a highly credible witness with broad knowledge of the wearing apparel industry.

6. In *Uniroyal, Inc. v. United States,* 9 CIT 187 (1985), the court held that a sneaker is ornamented by the presence of a colored patch, printed with the brand name "Pro-Keds," and placed on the ankle area. The court considered, but was not persuaded by, evidence that the patch strengthened the underlying fabric, and both protected and supported the wearer's ankle. The parties apparently did not raise, nor did the court discuss, the issue of the functionality of the brand name.

7. The court also reviewed the classification of other bottles etched with the name and address of the bottler and the words "This siphon not to be sold." *Koscherak,* 98 F. at 599. As to this merchandise, the decision of the lower court was reversed since these bottles were not ornamented or decorated by the writing. This Court considers the instant merchandise readily distinguishable from that held not ornamented in *Koscherak.* In any event, that portion of the decision has no bearing on the *Koscherak* court's treatment of the trademarked goods.

8. The court in *Morton v. United States,* 54 Cust.Ct. 107, C.D. 2516 (1965), held that knives, containing writing as well as a "Deltawing design" which was not a trademark, were ornamented. *Id.* at 111. That decision, given its facts, does not control the result in the case at bar. The court, in reaching its result, approvingly discussed the *Koscherak* opinion and made the following cryptic observation: "It is also interesting to note that the court [in *Koscherak*] reached its conclusion as to the second bottle, despite the fact that the ornamental design was also a trademark." *Id.*

the administrative predecessor to the Customs Court, has also held that a trademark may serve to decorate a given article. *In re Utard*, 27 Treas. Dec. 399, 401, T.D. 34,888 (1914). *Utard* dealt with the classification of detachable metal caps designed as screw covers for sprinkler tops used on bottles. The caps were embossed with a design representing a basket filled with flowers, which was a registered trademark of the importer of the merchandise. The goods were properly classified under a provision for "decorated bottle caps" and in so holding, the Board specifically noted the importer's argument that "the figure or design in question having been shown to be a trademark can not [sic] also be held to be a decoration...." *Id.* at 400. *See also In re Utard*, 3 Treas. Dec. 800, T.D. 22,503 (1900), *aff'd*, 124 F. 997 (C.C.S.D.N.Y.1903), *aff'd per curiam*, 128 F. 422 (2d Cir.1904) (involving identical merchandise and reaching similar result without express discussion of trademark issue).

The decision in *Utard* also cites, apparently with approval, decisions of the Court of Customs and Patent Appeals holding that trademarks may be decorative in character. In *Richard & Co. v. United States*, 4 Ct.Cust.App. 359, T.D. 33,533 (1913), the court remarked that trademarks are sometimes "elaborate and ornamental" devices. *Id.* at 362. The court in *United States v. Bernard, Judae & Co.*, 4 Ct.Cust.App. 403, T.D. 33,841 (1913), held that white china plates imprinted with two concentric circles within which appeared the manufacturer's trademark were "decorated china." The court expressly stated that "[t]he design is so placed and printed as to be attractive in color and design, and become as well as a trademark a matter of adornment or decoration." *Id.* at 403.

■ In sum, as the foregoing cases demonstrate, a trademark may be displayed upon an article in such fashion as to become primarily decorative. Moreover, that a trademark may be said to serve the "function" of identifying the source of goods or that an "ornamental" design is not trademarkable does not prevent the trademark from being ornamental for tar-

iff purposes. The meaning of a term for tariff purposes is not controlled by a definition provided by statutes, regulations, or case law involving non-tariff matters. *See Todd Shipyards Corp. v. United States*, 791 F.2d 164 (Fed. Cir.1986), *aff'g on opinion below*, 9 CIT 464, 624 F.Supp. 1553, 1555. n. 2 (1985) (citing *Int'l Spring Mfg. Co. v. United States*, 85 Cust.Ct. 5, 8, C.D. 4862, 496 F.Supp. 279, 282 (1980), *aff'd on opinion below*, 68 CCPA 13, C.A.D. 1257, 641 F.2d 875 (1981)); *Amersham Corp. v. United States*, 2 Fed.Cir. (T) 33, 728 F.2d 1453 (1984), *aff'g*, 5 CIT 49, 56, 564 F.Supp. 813, 817 (1983); *South Corp. v. United States*, 1 Fed.Cir. (T) 1, 8, 690 F.2d 1368, 1375 (1982) (en banc); *Pharmacia Laboratories, Inc. v. United States*, 67 CCPA 5, 7, C.A.D. 1235, 609 F.2d 491, 493 (1979); *United States v. Mercantil Distribuidora, S.A.*, 43 CCPA 111, 116, C.A.D. 617 (1956).

Nor does the decision in *Endicott Johnson* demand a contrary result. In the course of explicating its definition of functionality, the *Endicott* court offered examples of "significant purposes" that would qualify the stitching at issue therein as functional. These included: "strengthening the material, enabling the manufacture [sic] to produce the product more efficiently or cheaper, or producing a better product." *Endicott Johnson*, 67 CCPA at 51, 617 F.2d at 282. There is no evidence that the instant trademark produces a changed—much less a better—product. Viewed in the most favorable light, the testimony adduced on behalf of plaintiff shows only that consumers may associate the trademark with certain desirable qualities of athletic achievement. As noted previously, the feature here has not been shown to perform any differently than ornamentation.

### Conclusion

Plaintiff has failed to prove that, in terms of common or trade meaning, the warm-up suit would not be considered ornamented by the trademark. Defendant has demonstrated, despite the fact that it has no burden to do so, 28 U.S.C. § 2639(a)(1) (1982), that in the wearing apparel industry, the subject garments would be con-

**1444**

sidered ornamented, and any functional characteristics associated with the trademark are incidental to the ornamental nature of the feature.

### JUDGMENT

This case having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision, it is hereby

ORDERED, ADJUDGED, and DECREED: that the subject merchandise is properly classified under item 383.18, TSUS, and plaintiff's claim is hereby dismissed.