B & E SALES CO., INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 83–01–00160

## OPINION

(Decided February 2, 1988)

*Rode & Qualey (Patrick D. Gill)* for the plaintiff.

*Richard K. Willard*, Assistant Attorney General; *Joseph I. Liebman*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Department of Justice *(Susan Handler-Menahem)* for the defendant.

AQUILINO, *Judge:* Upon importation from Taiwan, plush, animal-shaped pajama bags were classified under item 389.50, Tariff Schedules of the United States ("TSUS") as "Articles not specifically provided for, of textile materials: * * * Other articles, not ornamented: * * * Of man-made fibers: * * * Pile or tufted construction", dutiable at 12 cents per pound, plus 22.7% *ad valorem.*

The plaintiff importer claims that this merchandise should have been classified under item A386.09, TSUS, free from duties under the Generalized System of Preference, as articles not specifically provided for, of textile materials, ornamented. In the alternative, the plaintiff claims classification under item A737.40, TSUS, free

from duties, as toy figures of animate objects (except dolls), not having a spring mechanism and not stuffed.

## The Merchandise

The goods are children's pajama bags, constructed of man-made pile fabric and marketed *sub nom.* "P.J. Pouch". They are designed to resemble a bunny, a frog or a teddy bear and to store young children's nightwear when not being worn. The bunny bag is colored pink and has stand-up ears and a bushy tail. The frog-like bag is green with bulging eyes. The bear bag resembles a panda, with a white body and black patches around its eyes. The bunny and the bear have plastic eyes and "pom-pom" noses which are glued to their faces. The frog's eyes are pom-pom-styled, and its nostrils and dimples are felt dots, all of which are glued to its face. Each bag has a yarn mouth that is affixed to the face by glue and a few looping stitches. Each has two pouches. The main one comprises the body of the bag and is of sufficient size to house the nightwear. A smaller "pocket" patch is sewn onto the front of the main pouch, forming a second, shallow pouch. While this second pouch is too small to use for storing pajamas, other, incidental items can be placed within it. Finally, each bag comes equipped with a string attached to the head, allowing the pieces to hang from a bedpost or doorknob.

## Discussion

Jurisdiction of the court is pursuant to 28 U.S.C. § 1581(a). The parties have filed cross-motions for summary judgment. The court has examined the pleadings and plaintiff's Statement of Material Facts and defendant's response thereto and concurs with the latter's representation that "there are no material facts in this case as to which there is a genuine issue to be tried."[1]

Plaintiff's primary point focuses on whether the merchandise is ornamented within the meaning of the TSUS by the ears, eyes, noses, mouths and pocket patches. Its position is:

> * * * An examination of the articles in issue, Exhibits A, B, and C to the complaint, demonstrates that the pajama bags are affixed with non-functional appendages which enhance the appearance of the pajama bags by giving them toylike features of animals. We submit that the ears, eyes, noses, and pocket patches on the imported articles constitute ornamentation within the meaning of Schedule 3, Headnote 3(a)(iii), (iv), and (v). These are clearly types of ornamentation in the form of textile fabrics and other ornaments or combinations thereof described in the fore-going headnote. Furthermore, we submit that the stitched-on mouths of these articles constitute ornamental needlework, not the type of functional stitching excluded from the definition of ornamentation in Schedule 3, Head-

---

[1]Statement of the United States and Response to Plaintiff's Statement of Material Facts, p. 1.

note 3(a)(i)(B). Indeed, this stitching is quite simply embroidery as described in Schedule 3, Headnote 3(a)(i)(A).[2]

The referenced sections of Headnote 3 to Schedule 3 (1982) provided as follows:

(a) [T]he term *"ornamented"*, as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

(i) fibers, filaments (including tinsel wire and lame), yarns, or cordage, any of the foregoing introduced as needlework or otherwise, including—

(A) embroidery, and pile or tufting, whether wholly cut, partly cut, or not cut, and
(B) other types of ornamentation, but not including functional stitching or one row of straight hemstitching adjoining a hem; * * *

(iii) lace, netting, braid, fringe, edging, tucking, or trimming, or textile fabric;
(iv) applique and replique work, beads, bugles, spangles, bullions or ornaments; or
(v) any combination of the foregoing types of ornamentation; * * *.

Part 7, Subpart B to that Schedule 3 covered articles not specially provided for, of textile materials, whether or not ornamented.

The issue of ornamentation has been discussed thoroughly in several recent cases. *See Nissho-Iwai American Corp.* v. *United States,* 11 CIT 231, 664 F.Supp. 1438 (1987), *appeal docketed,* No. 87–1388 (Fed. Cir. June 9, 1987); *Gelmart Industries Inc.* v. *United States,* 11 CIT 70, 655 F.Supp. 482 (1987); *Generra Sportswear Co.* v. *United States,* 10 CIT 794, Slip Op. 86–133 (Dec. 16, 1986). Central to the determination of each case was the two-prong test set forth in *United States* v. *Endicott Johnson Corp.,* 67 CCPA 47, 51, C.A.D. 1242, 617 F.2d 278, 282 (1980). In that case, the court of appeals addressed the issue of whether arch stitching on cotton-canvas shoe uppers constituted ornamentation within the meaning of the TSUS. In holding that it did not, the court relied on the following approach:

* * * The first question is: Does the addition of the [alleged ornamental features] impact no more than an incidental, decorative effect? The next question is: Do the [features] have a functionality which is primary to any ornamentative nature? An affirmative answer to either results in a nonornamental classification. If the former is resolved first, however, the latter may no longer be critical to a determination.[3]

---

[2]Plaintiff's Memorandum in Support of Motion for Summary Judgment, p. 2.

[3]67 CCPA at 50, 617 F.2d at 281 (footnote omitted). The court stated that the presence of an ornamental effect was a question of fact. *Id.*

As to the first question, this court must decide whether the eyes, ears, mouths, noses and pocket patches visibly enhance, embellish, beautify, adorn or decorate the merchandise. *Brittania Sportswear v. United States,* 5 CIT 212, 215 (1983). Only upon a finding that it is visibly ornamented must a determination be made as to whether "the feature possesses functionality to which the ornamental character is merely incidental." *Id.* After reviewing the exhibits submitted, the court finds that the addition of the facial features create an effect, which, while adorning and completing the merchandise's appearance, is nevertheless more than merely incidental or decorative.

As to the second question, the plaintiff argues:

> The function of the imported articles is to store pajamas. The decorative features described above have absolutely nothing to do with that function and simply decorate and enhance the appearance of these articles * * *. The features serve only to decorate. Only if these features were functional could the classification as non-ornamented stand.[4]

On this point, the courts in *Endicott Johnson* and more recently in *Nissho-Iwai American* have taken the approach that

> [f]unctional textile features have been described as those serving a significant purpose with respect to the character, construction, or manufacture of an article * * *. It is functional capability, together with the appropriateness of that function to the garment, which determines whether or not the feature is functional,

to quote from the latter opinion, 11 CIT at 233–234, 664 F.Supp. at 1440 (citations omitted).

Clearly, the alleged ornamentations serve a greater function for the product as a whole than mere decoration. The mouths, noses, eyes and ears are necessary for the animal likenesses which are the very essence of the merchandise. Stripped of those features, the bags would be inconsequential. Since the facial features do serve an apparent, significant purpose with respect to the character of the merchandise at issue, the court cannot, and therefore does not, hold that they constitute ornamentation for tariff purposes. That is, plaintiff's claim that the merchandise was improperly classified by the Customs Service cannot stand on that ground.

As indicated above, plaintiff's alternate claim is that the goods are better classified under item A737.40, TSUS as toy figures. Under Headnote 2 to Subpart E, Part 5 of Schedule 7, an import is classified a toy when its chief use is for amusement.

However, merchandise cannot have two such uses, one for amusement as a toy and another for something else. *See, e.g., Childcraft Education Corp. v. United States,* 742 F.2d 1413 (Fed. Cir. 1984).

---

[4]Plaintiff's Memorandum, p. 3 (citations omitted).

Since the plaintiff admits that the merchandise here "is not a toy but a functional pajama bag"[5] and that the pouches are "primarily used by children for storage of pajamas"[6], its alternate claim for classification under item A737.40 also cannot stand.

\* \* \* \* \* \* \*

In summary, the plaintiff has not overcome the presumption of correctness that attaches to the challenged classification, and judgment must therefore enter, dismissing this action.