**NISSHO IWAI AMERICAN CORP.,**
Plaintiff–Appellant,

v.

**The UNITED STATES,**
Defendant–Appellee.

No. 87–1388.

United States Court of Appeals,
Federal Circuit.

March 16, 1988.

James F. O'Hara, Stein, Shostak, Shostak & O'Hara, Los Angeles, Cal., argued, for plaintiff-appellant.

Michael P. Maxwell, Commercial Litigation Branch, Dept. of Justice, New York City, argued, for defendant-appellee. With him on the brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office.

Before FRIEDMAN, Circuit Judge, BALDWIN, Senior Circuit Judge, and BISSELL, Circuit Judge.

FRIEDMAN, Circuit Judge.

Nissho Iwai American Corporation appeals, pursuant to 28 U.S.C. § 1295(a)(5) (1982), from a judgment of the United States Court of International Trade that affirmed a United States Customs Service classification of children's warm-up suits embroidered with a registered United States trademark as "ornamented." *Nissho–Iwai Am. Corp. v. United States,* 664 F.Supp. 1438, 2 USPQ2d 1751 (Ct. Int'l Trade 1987). We affirm.

I

A. The issue in this case is the proper classification for Customs purposes of imported wearing apparel embroidered with a trademark of Nike, Inc. (Nike).

The appellant, Nissho Iwai American Corp. (Nissho), imported children's warm-up suits which had the Nike trademark embroidered on the chest portion. The United States Customs Service classified the imported warm-up suits as ornamented wearing apparel under schedule 3, part 6, item 383.18, of the Tariff Schedules of the United States (TSUS), which provides:

> Women's, girls', or infants' . . . wearing apparel, ornamented:
> Of man-made fibers:
> Knit:
> Blouses, body suits and body shirts, shirts, and sweaters
>
> . . .
>
> Other:
> Girls' and infants'        40% ad val.

Nissho disputed the classification and contended that the merchandise was properly classified as nonornamented pursuant to TSUS 383.80:

Other women's, girls', or infants' wearing apparel, not ornamented:
Of man-made fibers:
Knit:
Blouses, body suits and body shirts, shirts, and sweaters

. . .

Other:
Girls' and infants'  21¢ per lb. + 32.5% ad val.

Nissho contended that even if the embroidered trademark on the garments had a decorative effect, that effect was secondary to its primary trademark function of indicating source.

Nissho paid the duties and filed suit in the Court of International Trade seeking a refund of the duties. The issue at trial was whether the TSUS definition of "ornamented" included wearing apparel embroidered with a registered trademark.

B. The TSUS, schedule 3, headnote 3, defines "ornamented":

3. For the purposes of the tariff schedules—

(a) the term *"ornamented"*, as used with reference to textile fabrics and other articles of textile materials, means fabrics and other articles of textile materials which are ornamented with—

(i) fibers, filaments ... yarns, or cordage, any of the foregoing introduced as needlework or otherwise, including—

(A) embroidery ... and

(B) other types of ornamentation, but not including functional stitching or one row of straight hemstitching adjoining a hem;

... or

(v) any combination of the foregoing types or methods of ornamentation;

(Emphasis in original.) Thus, to be classified as ornamented, the merchandise must be articles of textile materials, ornamented with fibers introduced as needlework, including embroidery.

The trial court ruled that the merchandise was ornamented and sustained the classification.

The court applied the test in *United States v. Endicott Johnson Corp.*, 617 F.2d 278, 67 CCPA 47 (1980), namely, whether the stitching "impart[ed] no more than an incidental, decorative effect" or had "a functionality which is primary to any ornamentative nature[.] An affirmative answer to either results in a nonornamental classification." *Id.* at 281 (footnote omitted).

In determining whether the embroidered trademark had no more than an incidental decorative effect, the court in the present case noted that tariff terms are generally given their ordinary and commercial meaning.

"The word 'ornament' has customarily been construed in accordance with its dictionary meaning, to embrace that which enhances, embellishes, decorates, or adorns." In the instant case, it is clear that the embroidered trademark ornaments the warm-up suit. The Nike logo appears either in blue or pink raised stitches in sharp contrast to what is otherwise a plain, gray background. The insignia adorns the garment in a manner that "conforms to ordinary concepts of ornamentation." ... the Court concludes that plaintiff has failed to prove, by a preponderance of the credible evidence, that the insignia is only incidentally decorative.

664 F.Supp. at 1439–40, 2 USPQ2d at 1752 (citations and footnote omitted).

In holding that the embroidered trademark was not "functional," the court stated:

The more substantial question in the case at bar relates to the second prong of the aforementioned *Endicott Johnson* test, which mandates consideration of whether a given feature is primarily functional or ornamental. Those decorative features which are primarily functional are classified as nonornamental. Functional textile features have been described as those serving a significant purpose with respect to the character, construction, or manufacture of an article. It is functional capability, together with the appropriateness of that function

to the garment, which determines whether or not the feature is functional.

*Id.* at 1440, 2 USPQ2d at 1752 (citations and footnote omitted).

The court pointed out that although the embroidery functioned as a trademark, the embroidered stitches did not "improve the fit, nor strengthen the garment." *Id.* The court noted the testimony of the government's expert, Mr. Kahn, who

> explained that corporate logos are frequently used as ornamentation. In particular, the trademark appearing on the subject garments is ornamental. Based on his knowledge of the wearing apparel industry, the embroidered insignia in this case would be considered nonfunctional since it has no measurable impact with regard to actual use of the garment. Finally, Nike's marketing efforts aimed at building a psychological link between the product and athletic accomplishment is consistent with the manner ornamentation is frequently employed.

*Id.* at 1442, 2 USPQ2d at 1754 (trial transcript citations omitted).

## II

A. Nissho's principal contention is that because the embroidered Nike logo on the warm-up suits performs the function of a trademark, its presence on the garments required them to be classified for tariff purposes as not ornamented rather than as ornamented. Nissho argues that the attached logo performs the significant function of improving the "character" of the product. The image of athletic achievement that allegedly accompanies the mark is said to enhance the salability, value, and consumer acceptance of the garment. The presence of the mark is said to increase the price at which the garment is sold and the number sold. Thus, the presence of the mark on the garment is alleged to impart an economic benefit, which the court in *Endicott Johnson* held was not an ornamental or decorative purpose. Nissho relies on trademark cases that recognize the functional purpose of a trademark.

The function performed by a trademark is an important one. The trademark func-

tion of the embroidery at issue here, however, does not dictate the result for tariff purposes. We agree with and adopt the following statement of the trial court:

> [T]hat a trademark may be said to serve the "function" of identifying the source of goods or that an "ornamental" design is not trademarkable does not prevent the trademark from being ornamental for tariff purposes. The meaning of a term for tariff purposes is not controlled by a definition provided by statutes, regulations, or case law involving non-tariff matters.

664 F.Supp. at 1443, 2 USPQ2d at 1755.

Accordingly, the question is not whether the Nike logo performed a trademark function on the garment, but whether the garment bearing the embroidered Nike logo properly was classified as ornamented.

B. According to Nissho, the mere presence of embroidery on an article does not automatically render the article ornamented. Nissho contends that since the TSUS does not define "ornamented," the term must be given its common meaning, which is to enhance the appearance and beauty of something. Nissho asserts that Mr. Kahn's testimony does not support the conclusion that the trademark enhances the beauty or attractiveness of the garments and points to the testimony of its witness, Ms. Gribling, that the logo was "not attractive at all."

■ Contrary to Nissho's assertion, customs classifications do not depend upon whether the appearance and beauty of imported merchandise has been enhanced. Rather, the objective standard in schedule 3, headnote 3 is whether "textile materials ... are ornamented with ... fibers, filaments ... yarns, or cordage, including ... embroidery."

In applying the tariff classification system, the courts have developed an analytical framework within which to determine whether textiles and wearing apparel are ornamented. *See, e.g., United States v. Endicott Johnson Corp.,* 617 F.2d 278, 67 CCPA 47 (1980). This framework recognizes that although stitching, for example,

may have a decorative effect upon an article, it is not ornamentation when it strengthens that article. This is an objective standard which recognizes the common practice of manufacturers to make functional elements of items more attractive to consumers. Thus, unless the "significant purposes" identified in *Endicott Johnson*, 617 F.2d at 282, are present in the embroidered trademark (i.e., increased product strength, more efficient product production, or product improvement), the merchandise here at issue is ornamented.

Here, as noted, the Court of International Trade correctly ruled that the embroidered trademark was not functional. The court, "having carefully considered the testimony given at trial and having thoroughly reviewed the trial transcript," found that Mr. Kahn was "a highly credible witness with broad knowledge of the wearing apparel industry." 664 F.Supp. at 1442 n. 5, 2 USPQ2d at 1754 n. 5. The court justifiably relied upon his testimony in correctly holding that garments bearing the embroidered Nike trademark were "ornamented" within the meaning of the TSUS definition.

## CONCLUSION

The judgment of the Court of International Trade is

AFFIRMED.